UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| BETSY RAMOS, on Behalf of Herself and All Others Similarly Situated, 429 West 34th Street Lorain, Ohio 44055<br><br>    Plaintiff,<br><br>v.<br><br>STEAK N SHAKE, INC. c/o Corporation Service Company 50 West Broad Street, Suite 1330 Columbus OH 43215<br><br>    Defendant. | CASE NO.<br><br>JUDGE:<br><br>MAGISTRATE JUDGE:<br><br><br>(JURY TRIAL DEMANDED) |

## PLAINTIFF'S COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. The case implicates Defendant Steak N Shake, Inc.'s ("Defendant") violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage rate and violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Revised Code ("R.C.") § 4111.01, *et seq*. for Defendant's failure to pay Plaintiff and all similarly situated workers their earned minimum wages. Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. § 216(b) and pursuant to the OMFWSA, R.C. § 4111.14(K)(2).

2. Defendant pays its tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Ohio, the OMFWSA. Under the tip-credit provisions, an employer of tipped employees may, under certain

circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. § 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id.* stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir.1999)(for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA.", citing 29 U.S.C. § 203); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA and 50% of the Ohio minimum wage rate). *See* 29 U.S.C. § 203(m).

6. Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir.2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

7. Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Harrison v. Rockne's Inc.,* 274 F. Supp. 3d 706, 713 (N.D. Ohio 2017)(Plaintiffs sufficiently alleged a claim when "they alleged that they were required to perform non-tipped related duties more than 20% of their regular work."); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time.").

8. Defendant violated the FLSA and OMFWSA in the following respects:

   a. **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendant failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

    b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendant, which reduced her wages below the minimum hourly wage required for tipped employees.

    c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cleaning ledges, cleaning the kitchen, cleaning walls, cleaning window blinds and windows, dusting the ceiling fans, cleaning bathrooms, and washing trays and silverware.

    d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to perform greater than 20% of her time in performing non-tip producing side work, including, but not limited to, cleaning and stocking the serving line, cleaning booths, cleaning chairs, cleaning menus, cleaning soft drink dispensers and nozzles, cleaning tables, filling and cleaning ketchup and syrup bottles, filling and cleaning salt and pepper shakers, stocking ice, sweeping floors, rolling silverware, and taking out trash.

9. As a result of these violations, Defendant has lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendant must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12. Plaintiff Betsy Ramos is an individual residing in Ohio. Her written consent to this action is attached hereto as Exhibit "A."

13. The FLSA Class Members are all current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.

14. The Ohio Class Members are all current and former tipped employees who worked for Defendant in Ohio for at least one week during the three-year period prior to the filing of this action to the present.

15. The FLSA Class Members and the Ohio Class Members shall be collectively referred to as the "Class Members."

16. Defendant Steak N Shake, Inc., is a foreign for-profit corporation licensed to conduct business in Ohio.

17. Defendant at all times relevant to this action has had sufficient minimum contacts with the State of Ohio to confer personal jurisdiction. Defendant conducts business throughout Ohio. Furthermore, Defendant contracted with and employed Ohio residents, has Ohio customers, markets to residents of Ohio, and owns property in Ohio. Moreover, the violation of the law and harm committed against Plaintiff occurred in Ohio.

## COVERAGE

18. At all times relevant herein, Plaintiff was an employee within the meaning of 29 U.S. § 203(e) and R.C. § 4111.03(D)(3).

19. At all times relevant herein, Defendant was a corporation for profit organized and existing under the laws of the State of Ohio.

20. At all times relevant herein, Defendant was an employer within the meaning of 29 U.S.C. § 203(d) and O.R.C. § 4111.03(D)(2).

21. At all times relevant herein, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

22. At all times relevant herein, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

23. At all times relevant herein, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

## FACTS

24. Defendant operates a nationwide chain of restaurants under the trade name "Steak N Shake" throughout the U.S. Defendant operates in Alabama, Florida, Mississippi, Missouri, Georgia, Kentucky, Oklahoma, Ohio, Tennessee, Texas, and other states.

25. The Steak N Shake restaurants are full service restaurants that employ waiters to provide services to customers.

26. A waiter gathers orders from customers and delivers food and drinks to the customers.

27. Defendant pays its waiters less than the federal minimum wage of $7.25 per hour.

28. Defendant attempted to utilize the tip credit to meet its minimum wage obligation to its waiters, including the Plaintiff and Class Members.

29. Plaintiff Ramos worked for Defendant at the Steak N Shake location in Elyria, Ohio. She worked as waitress and was paid less than the minimum wage. She worked for Defendant from November 2006 to March 2020.

30. The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion

in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 11, 2021). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (emphasis in original)

31. Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer how seeks to utilize the trip credit to meet their minimum wage obligations.

32. In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy and practice whereby they failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

33. Defendant also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being

compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

34. These duties include but are not limited to the following: cleaning ledges, cleaning the kitchen, cleaning walls, cleaning window blinds and windows, dusting walls and fans, cleaning bathrooms, and washing trays and silverware.

35. Defendant also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

36. Specifically, Defendant maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to cleaning and stocking the serving line, cleaning booths, cleaning chairs, cleaning menus, cleaning soft drink dispensers and nozzles, cleaning tables, filling and cleaning ketchup and syrup bottles, filling and cleaning salt and pepper shakers, stocking ice, sweeping floors, rolling silverware, and taking out trash, amongst other activities, that were not related to tipped duties. In fact, Plaintiff had to wash dishes, bus her tables, work as a cashier, and perform host duties – duties of which are normally performed by a worker paid above the minimum wage.

37. Further, Defendant required Plaintiffs and the Class Members to perform non-tipped producing work prior to the opening of the restaurant and after the restaurant closed. Indeed, Defendant required the Plaintiff and the Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendant required the Plaintiff and Class Members to remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they spent 30 minutes to two hours performing

work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

38. However, Defendant did not pay its tipped employees the full minimum wage rate for this work. The duties that Defendant required Plaintiffs and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

39. During Plaintiff's and the Class Members' employment, checklists were posted in Defendant's restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

40. When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

41. Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

42. Defendant did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendant was capable of doing so. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track to the specific tasks for Plaintiff or the Class Members.

43. Defendant uses a point-of-sale system to record hours worked by its tipped employees. Defendant then analyzes the information collected by this system, including the labor costs at each of the restaurants. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track to the specific tasks for Plaintiff and the Class Members.

44. In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

45. However, Defendant did not allow its tipped employees to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

46. Defendant's managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

47. Moreover, Defendant violated the FLSA by not even paying the minimum "tipped" hourly rate. Defendant required its tipped employees to pay for items for their uniform, including shirts, pants, belts, and shoes. These clothing items were required to perform work for Defendant and were primarily for the benefit and convenience of Defendant. The costs for these items were not reimbursed by Defendant.

48. Because Defendant paid its tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in which a tipped employee was required to pay for work related expenses for Defendant's business, their compensation fell below the minimum wage rate, thereby negating Defendant's entitlement to claim the tip credit.

49. In other words, by requiring Plaintiff and the Class Members to pay for these work related expenses, their hourly rates of pay were reduced by the amount of these uniform costs. As a result, they were not even paid the minimum hourly rate necessary for Defendant to claim the tip credit.

50. Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

51. As such, Plaintiff and the FLSA Class Members were not compensated at the federally mandated minimum wage.

52. Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law carried and continues to carry out an illegal pattern and practice regarding its tipped employees. Defendant's method of paying Plaintiff and the Class Members was not based on a good faith and reasonable belief that its conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

53. On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference.  *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Miss. 2019).

54. Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).  After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).  However, the Department of Labor has since delayed the effective

11

date of the Final Rule to December 31, 2021 so that it can reconsider whether to implement the Final Rule at all. (https://www.dol.gov/agencies/whd/flsa/tips).

55. Nevertheless, the proposed revised regulation, the Department of Labor made clear that an employer may only take a tip credit under the following circumstances:

> consistent with the Department's current guidance, that an employer may take a tip credit for all non-tipped duties an employee performs that meet two requirements. First, the **duties must be related to the employee's tipped occupation**; second, the **employee must perform the related duties contemporaneously with the tip-producing activities** or **within a reasonable time immediately before or after the tipped activities**.

(*Id.*) (emphasis added).

56. The Department of Labor provided guidance in the Final Rule about when the tip credit may be taken and provided the following hypothetical:

> consider the following scenario: a hotel bellhop continuously performs tipped duties such as carrying luggage to guests' rooms during a busy 8-hour shift and then works for an additional 2 hours performing related non-tipped duties such as cleaning, organizing, and maintaining bag carts in storage. The 2 hours of related nontipped duties would not be "for a reasonable time" after the performance of tipped duties. **Accordingly, the bellhop was engaged in a tipped occupation (bellhop) for 8 hours and a non-tipped occupation (cleaner) for 2 hours.**

(*Id.*) (emphasis added).

57. The Department of Labor explained that there is no bright line rule as to when an activity is considered performed within "a reasonable time" before or after the tipped activities. Instead, the circumstances of the job determine the reasonableness.

> the allowance for related duties performed "for a reasonable time immediately before or after" a tipped duty creates a sufficiently intelligible distinction between employees engaged in tipped occupations and non-tipped occupations. It is true that this limit does not create as bright a line as a firm cap on the amount of time an employee may spend on particular duties (although the 80/20 approach creates significantly greater uncertainty in other ways as discussed below). But the concept of reasonableness is a cornerstone of modern common law and is familiar to employers in a variety of contexts…

12

> **Reasonableness balances a flexible accounting of circumstances with a sufficiently definite limit on acceptable conduct in those contexts**. This flexible approach is appropriate to apply to the question of whether particular duties are a part of an employee's tipped occupation.

(*Id*.) (emphasis added).

58. Under the proposed revised regulation, Defendant's pay policies violate the law. First, Defendant illegally took a tip credit for the time spent performing tasks not contained in the O*NET Task list, including but not limited to, the time spent by Plaintiff and the Class Members doing dishes, taking out trash, cleaning ledges, dusting walls, dusting blinds, dusting fans, washing trays, and washing appliances.

59. Second, Defendant illegally required Plaintiff and the Class Members to perform non-tip producing work that was not contemporaneous with their duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties.  That is because Defendant required Plaintiff and the Class Members to perform non-tipped work 30 minutes to two hours before the restaurants were open for business or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips. During this time, Defendant paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties such as cleaning and stocking the serving line, cleaning booths, cleaning chairs, cleaning menus, cleaning soft drink dispensers and nozzles, cleaning tables, filling and cleaning ketchup and syrup bottles, filling and cleaning salt and pepper shakers, stocking ice, sweeping floors, rolling silverware, and taking out trash, amongst other activities.

60. Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the minimum wage rate of $7.25 per hour for all hours they worked for Defendant.

## **COLLECTIVE ACTION ALLEGATIONS**

61. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendant as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

62. Plaintiff has actual knowledge, through conversations with her co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

63. The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

64. Like Plaintiff, the FLSA Class Members were not given proper notice of the tip credit provisions, were subject to the same illegal deductions from their wages and tips, and performed substantial work that was unrelated to their tip producing duties.

65. Further, the FLSA Class Members were, like Plaintiff, not properly informed of Defendant's intent to utilize the tip credit.

66. Moreover, the FLSA Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

67. Plaintiff and the FLSA Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

68. The names and address of the FLSA Class Members of the collective action are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

69. Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

70. As such, the class of similarly situated Class Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.**

## OHIO COLLECTIVE ACTION ALLEGATIONS

71. Plaintiff brings this action as a collective action on behalf of the Ohio Class Members which is comprised of the following:

> **All current and former tipped employees who worked for Defendant for at least one week in Ohio during the three-year period prior to the filing of this action to the present.**

72. Plaintiff has actual knowledge, through conversations with her co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

73. The Ohio Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the OMFWSA.

74. Like Plaintiff, the Ohio Class Members were not given proper notice of the tip credit provisions, were subject to the same illegal deductions from their wages and tips, and performed substantial work that was unrelated to their tip producing duties.

75. Further, the Ohio Class Members were, like Plaintiff, not properly informed of Defendant's intent to utilize the tip credit.

76. Moreover, the Ohio Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

15

77. Plaintiff and the Ohio Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

78. The names and address of the Ohio Class Members of the collective action are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

79. Although the exact amount of damages may vary among the Ohio Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

## **CAUSES OF ACTION**

### COUNT I
### VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARD ACT
### FAILURE TO PAY THE MINIMUM WAGE

80. Plaintiff incorporates the preceding paragraphs by reference.

81. This count arises from Defendant's violation of the OMFWSA failure to pay minimum wages to Plaintiff and the Ohio Class Members.

82. During their employment with Defendant, Plaintiff and the Ohio Class Members were not exempt from the minimum wage provisions of the OMFWSA.

83. Defendant paid Plaintiff and the Ohio Class Members below the minimum wage rate in Ohio, in violation of R.C. § 4111.02.

### COUNT II
### VIOLATION OF THE FAIR LABOR STANDARDS
### FAILURE TO PAY THE MINIMUM WAGE

84. Plaintiff incorporates the preceding paragraphs by reference.

85. This count arises from Defendant's violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

86. Plaintiff and the FLSA Class Members were paid hourly rates less than the minimum wage while working for Defendant.

87. Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

88. Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the Federal minimum wage rate. Defendant's violation of the FLSA was willful.

89. Defendant's practice of failing to inform its employees of its intent to rely on the tip credit to meets its minimum wage obligations violates the FLSA.

90. Defendant's failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that its conduct did not violate the FLSA. To foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA. 29 U.S.C. § 255(a).

## WAGE DAMAGES SOUGHT

91. Plaintiff and the FLSA Class Members are entitled to receive the difference between the Federal minimum wage of $7.25 an hour and the tip credit adjusted minimum wage for each hour they worked.

92. Plaintiff and the Ohio Class Members are entitled to receive the difference between the Ohio minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

93. Plaintiff and the Class Members are entitled to reimbursement for all illegal deductions.

94. Plaintiff and the Class Members are entitled to reimbursement for all work related expenses they paid.

95. Plaintiff and the Class Members are entitled to liquidated damages.

96. Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs, as required by the FLSA and Ohio law.

## JURY DEMAND

97. Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

98. For these reasons, Plaintiff respectfully requests that judgment be entered in her favor awarding her and the Class Members:

   a. Issue an order permitting this litigation to process as a collective action;

   b. Order prompt notice to all class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b) and R.C. § 4111.14 (K);

   c. Minimum wage compensation unadulterated by the tip credit;

   d. Liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the class under the FLSA;

   e. Liquidated damages calculated as an additional two times the amount of unpaid minimum wages found due to Plaintiff and the class under the OMFWSA;

   f. All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

   g. An order requiring Defendant to correct their pay practices going forward;

   h. Reasonable attorney's fees, costs, and expenses of this action;

i. Pre and post judgment interest; and

j. Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted,

/s/ Lori M. Griffin
Lori M. Griffin (0085241)
Anthony J. Lazzaro (0077962)
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

And

/s/ Don J. Foty
HODGES & FOTY, L.L.P.
Texas State Bar No. 24050022
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@hftrialfirm.com

Attorneys for Plaintiff and Class Members

**JURY DEMAND**

Plaintiff demands a trial by jury on all eligible claims and issues.

/s/ Lori M. Griffin
One of the Attorneys for Plaintiff

## CONSENT FORM

1. I consent and agree to pursue my claims for unpaid overtime and/or minimum wages through the lawsuit filed against my employer.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act and/or state wage and hour laws.  I hereby consent, agree and opt-in to become a plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

3. I intend to pursue my claim individually, unless and until the court or parties certify this case as a collective or class action.  If someone else serves as the class representative(s), then I designate the class representative(s) as my agent(s) to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with Plaintiff's counsel concerning fees and costs, the entering into a settlement agreement with my employer, and all other matters pertaining to this action.

4. In the event the case is certified and then decertified, I authorize Plaintiff's counsel to use this Consent Form to re-file my claims in a separate or related action against my employer.

**Employer:**

Steak and Shake

Signature: _Betsy Ramos (May 26, 2021 13:26 EDT)_   Date:   May 26, 2021

Betsy Ramos
429 West 34th Street
Lorain, OH 44055
mylove3290@gmail.com