UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| EMILY HARDING, | CASE NO. 1-21-cv-01212 |
| Plaintiff, | OPINION & ORDER |
|  | [Resolving Docs. 37; 38] |
| v. |  |
| STEAK N SHAKE, INC., |  |
| Defendant. |  |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Emily Harding sues her former employer Defendant Steak N Shake, Inc. for federal and state wage law violations.[1]

Plaintiff Harding now asks the Court to conditionally certify a 29 U.S.C. § 216(b) Fair Labor Standards Act ("FLSA") collective of similarly situated employees.[2] Defendant opposes.[3] Plaintiff further asks the Court to require Steak N Shake to provide contact information for all putative collective action plaintiffs within 14 days of any collective action certification, and to authorize a proposed notice to be distributed by mail, email, and text.[4] Defendant opposes.[5]

With this motion, the Court decides whether Plaintiff has shown that her "position is similar, not identical, to the positions held by the putative class members."[6]

For the following reasons, the Court **CONDITIONALLY CERTIFIES** Plaintiff's FLSA collective. The Court **DIRECTS** parties to take actions in conformity with this order.

---

[1] Doc. 15-1.
[2] Docs. 37; 37-1; 52.
[3] Doc. 46.
[4] Docs. 38; 53.
[5] Doc. 47.
[6] *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006) (citations omitted).

Case No. 1-21-cv-01212
GWIN, J.

I. Background

Defendant Steak N Shake operates fifty-three Ohio restaurants.[7] Prior to the Covid-19 pandemic, Steak N Shake employed servers in its restaurants to take customers' orders and provide customers' food and drink.[8] From November 2009 to May 2019 Plaintiff Harding worked as a Steak N Shake server at the Steak N Shake Sheffield and Kamms Corner locations.[9]

Plaintiff Harding says that Defendant paid her less than the federal minimum wage. Plaintiff also says that Defendant could not pay her at the tip-credit rate because Plaintiff did substantial non-tipped work. Plaintiff says Steak N Shake required her and other servers to perform various non-tipped duties including:

> picking up trash, mopping/sweeping, cleaning the bathroom, cleaning tables and booths, cleaning placemats, cleaning tea urns, cleaning faucets, cleaning dispensers, cleaning underneath equipment, cleaning counters, cleaning shelves, cleaning the POS machine and register, [] wiping the soda dispenser . . . working the cash register, helping prepare food in the kitchen, [] doing dishes . . . rolling silverware, refilling condiments, and other duties.[10]

Plaintiff estimates that she and other servers spent more than twenty percent of their work time and more than thirty consecutive minutes performing non-tipped side work.[11] She also says she was engaged in a dual job because she had to perform non-tipped work unrelated to her tipped server work.[12]

Plaintiff submits sworn declarations from Steak N Shake employees working at the Polaris, Powell, Zanesville, Cleveland, Brooklyn, and Elyria Steak N Shakes.[13] These

---

[7] Doc. 46-1 at 2.
[8] *Id.* at 4. After the Covid-19 pandemic began, Steak N Shake restaurants eliminated table service giving patrons the option of placing orders via drive-thrus, for delivery, or for curbside service. *Id.* at 5.
[9] Doc. 15-1 at 6.
[10] Doc. 37-2 at 1–2.
[11] Doc. 37-2 at 2.
[12] Docs. 37 at 2; 37-2 at 2.
[13] Docs. 37-3; 37-4; 37-5; 37-6; 37-7.

- 2 -

Case No. 1-21-cv-01212
GWIN, J.

declarations generally state that server job duties and working conditions are similar across Steak N Shake locations. Each server states that they are paid below minimum wage and that they devote a significant portion of their shifts to non-tipped side work and non-tipped work unrelated to their role as a server.

Plaintiff says this conduct violates the FLSA tip-credit provision and seeks to conditionally certify a FLSA collective of: "All current and former tipped employees who worked for Defendant for at least one week in Ohio during the three-year period prior to the date the Court grants conditional certification to the present."[14]

Plaintiff also asks the Court to require Steak N Shake to provide the names, dates of employment, last known addresses, phone numbers, dates of birth, and email addresses for all putative plaintiffs within fourteen days of certification, and authorize a proposed notice to be distributed by mail, email, and text.[15]

Defendant opposes, arguing that: (1) Plaintiff has not provided sufficient support for her contention Steak N Shake's supposed FLSA violations were Ohio-wide; (2) Plaintiff does not share the same claims as putative plaintiffs; (3) Steak N Shake maintains compliant policies and practices; and (4) notice should not be sent to putative plaintiffs who signed arbitration agreements.[16] Defendant also disputes Plaintiff's proposed notice and consent forms, and distribution plan.[17]

## II. The Court Conditionally Certifies a Collective Action

Employees must be "similarly situated" to bring a FLSA collective action.[18] FLSA

---

[14] Doc. 37-1 at 8.
[15] Doc. 38-2.
[16] Doc. 46.
[17] Doc. 47.
[18] 29 U.S.C. § 216(b).

- 3 -

Case No. 1-21-cv-01212
GWIN, J.

collective plaintiffs are similarly situated if their "causes of action accrued in approximately the same manner as those of the named plaintiffs."[19] Further, employees can be similarly situated when their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."[20]

To make this determination, the Court considers the "factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action."[21]

There are two stages to the FLSA collective action certification process. At the first "notice" stage, a plaintiff must make a "modest factual showing" that "his position is similar, not identical, to the positions held by putative class members."[22] This is a "fairly lenient" standard.[23] At the second stage, after discovery, the Court more closely considers the collective action employees' situations.[24]

### A. Ohio-wide Collective

Plaintiff has demonstrated that she and putative class members are similarly situated.

Plaintiff states that she was paid a sub-minimum tipped-credit wage rate but performed non-tipped duties that disqualified the use of the tipped-credit wage rate. She alleges that other Steak N Shake servers had similar job responsibilities and pay structures.[25]

---

[19] *Lewis v. Huntington Nat'l Bank,* 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011).
[20] *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 585 (6th Cir. 2009).
[21] *Id.* at 584 (alterations in original) (quoting Charles Alan Wright et al., 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.)), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153 (2016).
[22] *Comer,* 454 F.3d at 546–47 (citations omitted).
[23] *Id.* at 547 (citations omitted); see *Kopp v. Precision Broadband Installations, Inc.,* No. 3:20 CV 2779, 2021 WL 2688520, at *2 (N.D. Ohio June 30, 2021) ("At the notice stage, conditional certification operates exactly as described—it is *conditional*, and the bar is set low by design.") (emphasis in original).
[24] *Comer,* 454 F.3d at 547.
[25] Docs. 37-1 at 20–25; 37-2.

- 4 -

Case No. 1-21-cv-01212
GWIN, J.

Plaintiff Harding also presented declarations from five other current or former Steak N Shake servers who—along with Plaintiff—worked at eight Steak N Shake locations.[26] These declarations state that they too were paid at a sub-minimum wage while being required to perform significant amounts of non-tipped work. These servers further say they are aware that other Steak N Shake employees were treated similarly.[27]

In addition to providing declarations representing fifteen percent[28] of Steak N Shake's Ohio locations, Plaintiff also provides support for its claim that Steak N Shake operates all its restaurants in a similar fashion through shared job descriptions and policies.[29] These uniform policies further support conditional certification of an Ohio-wide class.[30]

Defendant argues that certification of an Ohio-wide class is improper because Plaintiff has not "presented evidence about a common practice, policy, or plan" applicable to all putative plaintiffs, and the only Ohio-wide policies demonstrate FLSA compliance.[31]

Plaintiff, however, need not show that she suffered from a single policy. Showing a unified policy is one way to show that a plaintiff and the class are similarly situated but collective action plaintiffs can be similarly situated without a formal policy.[32] Further, the

---

[26] Docs. 37-3; 37-4; 37-5; 37-6; 37-7. Though Defendant insists that Plaintiffs have produced too few declarations, "there is no magic number of declarations required for certification of a collective action." *Kis v. Covelli Enterprises, Inc.*, No. 4:18-CV-434, 2018 WL 2227782, at *2 (N.D. Ohio May 16, 2018) (citing *Myers v. Marietta Memorial Hosp.*, 201 F. Supp. 3d 884, 892 (S.D. Ohio 2016) ("[T]here is no threshold requirement for a certain number of affidavits from employees to certify conditionally a collective action.")); *see Amos v. Lincoln Prop. Co.*, No. 3:17-CV-37, 2017 WL 2935834, at *4 (M.D. Tenn. July 7, 2017) (conditionally certifying statewide class based on a single plaintiff's declaration).

[27] *See Marek v. Toledo Tool & Die Co.*, No. 3:16CV03005, 2017 WL 5891765, at *5 (N.D. Ohio Nov. 29, 2017) (plaintiffs succeeded in conditional certification because they "submitted affidavits reflecting their personal knowledge that individuals employed in similar roles were paid by a similar method that violated the FLSA.") (citation omitted).

[28] Defendant notes that in a factually analogous case filed in the District Court for the Southern District of Indiana, the district court declined to conditionally certify a nationwide collective. *See* Doc. 46-2. In that case, however, Plaintiffs had submitted declarations representing only four percent of all Steak N Shake locations. *Id.* at 11. That is distinguishable from the proposed Ohio-wide collective in this case.

[29] *See* Docs. 37-8; 37-9; 37-11; 37-12; 37-13; 37-14; 37-15; 37-16; 37-17.

[30] *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 772 (N.D. Ohio 2015) ("Certainly, it is true that job descriptions containing similar job duties, along with other evidence that demonstrates that the plaintiffs and opt-in plaintiffs are similarly situated with respect to job duties, can establish a company-wide FLSA violation.") (citations omitted).

[31] Doc. 46 at 18–20.

[32] *See O'Brien*, 575 F.3d at 585.

- 5 -

Case No. 1-21-cv-01212
GWIN, J.

merits of whether Steak N Shake's policies did violate the FLSA is not relevant to deciding whether this case should proceed as a collective action.[33]

### B. Arbitration Agreements

Defendants propose restricting notice to employees who did not sign binding arbitration agreements.[34] Approximately 720 of the 3,650 servers employed by Steak N Shake in Ohio since June 1, 2018 have signed arbitration agreements.[35]

In this Circuit, "employees who do not sign individual arbitration agreements are free to sue collectively, and those who do sign individual arbitration agreements are not."[36]

While arbitration agreements were traditionally not considered until the decertification stage, "our intra-circuit district courts have begun to consider evidence of such agreements earlier in the lifespan of a FLSA case."[37] The Sixth Circuit law on this issue is currently unsettled.[38] The Fifth and Seventh Circuits, however, have held that arbitration agreements should be considered at the notice stage.[39]

The Court exercises its discretion to follow the emerging trend. The Court denies Plaintiff's request to send collective action notice to employees with binding arbitration agreements.

The Court notes that Defendants have the burden to show valid arbitration agreements.[40] Plaintiff may therefore separately challenge the existence and validity of the

---

[33] *Kis*, 2018 WL 2227782 at *2 (citing *Waggoner*, 110 F. Supp. 3d at 765 ("During this preliminary stage, a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility.")).
[34] Doc. 46 at 20–21.
[35] Doc. 46-1 at 4.
[36] *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) (citation omitted).
[37] *Holder v. A&L Home Care and Training Ctr., LLC*, 1:20-CV-757, 2021 WL 3400654, at *11 (S.D. Ohio Aug. 4, 2021).
[38] *Id.*; *York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 687–89 (W.D. Ky. 2021).
[39] *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020).
[40] *Holder*, 2021 WL 3400654 at *8.

- 6 -

Case No. 1-21-cv-01212
GWIN, J.

arbitration agreements.[41]

### III. Distribution Plan

Plaintiff requests to provide notice by mail, email, and text message.[42] Responding, Defendant argues distribution should be limited to a single method: regular mail.[43]

The Court approves Plaintiff's request for notice by mail and email, but denies Plaintiff's request for notice by text message. The Court has "discretion in deciding how notice is disseminated."[44] Northern District of Ohio courts routinely authorize notice by email.[45] Email "is an inexpensive, non-invasive, effective way to ensure that notice is received in a timely manner."[46]

### IV. Notice and Consent to Join Forms

In overseeing notice, "courts must be scrupulous to respect judicial neutrality" and "avoid even the appearance of judicial endorsement of the merits of the action."[47] The Court approves the attached Notice and Consent to Join forms.

### V. Conclusion

For the foregoing reasons, the Court **CONDITIONALLY CERTIFIES** an FLSA collective of: All current and former tipped employees who worked for Defendant for at least one week in Ohio during the three-year period prior to the date the Court grants conditional certification to the present.

The Court **DENIES** Plaintiff's request to send collective action notice to employees

---

[41] *York*, 524 F. Supp. 3d at 689.
[42] Docs. 38; 38-2.
[43] Doc. 47 at 5.
[44] *Staggs v. Fuyao Glass Am., Inc.*, 3:17-CV-191, 2018 WL 840178, at *2 (S.D. Ohio Feb. 8, 2018).
[45] *See, e.g., Wright v. Physicians & Surgeons Ambul. Serv., Inc.*, 5:18-CV-372, 2018 WL 4519892, at *3 (N.D. Ohio Sept. 21, 2018).
[46] *Brandenburg v. Cousin Vinny's Pizza, LLC*, 3:16-CV-516, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017).
[47] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

Case No. 1-21-cv-01212
GWIN, J.

with binding arbitration agreements.

The Court **APPROVES** the attached Notice and Consent to Join forms.

The Court **DIRECTS** Defendant to provide Plaintiff with a roster of all potential opt-in plaintiffs, including their full names, their dates of employment, job titles, their last known home addresses, phone numbers, and their personal email addresses within fourteen days of this Order. The Court further **ORDERS** Notice and Consent to Join forms to be sent within fourteen days of Plaintiff receiving Defendant's roster.

The Court **ORDERS** a 60-day opt-in period. The Court also **ORDERS** the parties to file a joint status report within 14 days of the close of the opt-in period.

The Court **ORDERS** that any motion to decertify the collective action be filed by May 2, 2022, with responses due on May 16, 2022, and any reply due on May 23, 2022.

IT IS SO ORDERED.

Dated: February 11, 2022  *s/   James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE