**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**CLEVELAND DIVISION**

| | |
|---|---|
| **EMILY HARDING, on behalf of herself and all others similarly situated,** ) | |
| ) | |
| Plaintiffs, ) | **Case No. 1:21-CV-1212** |
| ) | |
| v. ) | **JUDGE BRIDGET MEEHAN BRENNAN** |
| ) | |
| **STEAK N SHAKE, INC.,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION**
**TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**

Patrick F. Hulla        MO #41745
700 West 47th Street, Suite 500
Kansas City, MO 64112
Telephone: 816.471.1301
Facsimile: 816.471.1303
patrick.hulla@ogletree.com

Mathew A. Parker (0093231)
20 South Third Street, Suite 210
Columbus, OH 43215
Telephone: 614.494.0420
Facsimile: 614.633.1455
mathew.parker@ogletree.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT ................................................................1

II.    FACTS ................................................................................................................1

    A.    Steak n Shake's Relevant Policies................................................1

    B.    Steak 'n Shake's Operations Throughout Ohio.........................3

III.    ARGUMENT ......................................................................................................3

    A.    Summary Judgment Standard........................................................3

    B.    Plaintiffs Offer No Evidence All Plaintiffs Performed Compensable, Non-Tip Credit Work Between Their Last Customer "Tabbing Out" and Plaintiffs Clocking Out.......................................................................4

    C.    Plaintiffs Incorrectly Meld Non-Tipped Work with Tip Supporting Activity .........................................................................4

        1.    Dual Jobs....................................................................5

        2.    Side Work ..................................................................8

    D.    Plaintiffs, and Managers, Lack Personal Knowledge about Activity at Other Stores, thus, Inherently Creating Genuine Disputes of Material Fact. ...............................................................8

    E.    Plaintiffs are not Entitled to Summary Judgment Regarding Non-Tipped Activity. .......................................................................9

        1.    Work Task Charts ..................................................10

        2.    Deposition Testimony ...........................................11

        3.    Mt. Clemens does not Justify Summary Judgment. ...................................................14

IV.    CONCLUSION ................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ..................................................................................................14, 15, 17

*Ash v. Sambodromo, LLC*,
  676 F. Supp. 2d 1360 (S.D. Fla. 2009) ...................................................................16

*Crate v. Q's Rest. Grp. LLC*,
  2014 U.S. Dist. LEXIS 61360 (M.D. Fla. May 2, 2014) .......................................16

*Fast v. Applebee's Intern. Inc.*,
  638 F.3d 872 (8th Cir. 2011) ...................................................................................16

*Fulkerson v. Yaskawa Am., Inc.*,
  3:13-CV-130, 2014 WL 4638982 (S.D. Ohio Sept. 16, 2014) ...............................15

*McLean v. 988011 Ontario, Ltd.*,
  224 F.3d 797 (6th Cir. 2000) ................................................................................3, 4

*Monroe v. FTS USA, LLC*,
  815 F.3d 1000 (6th Cir. 2016), cert. granted, judgment vacated,
  196 L. Ed. 2d 471 (Dec. 12, 2016) ........................................................................14

*Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*,
  276 F.3d 845 (6th Cir. 2002) .....................................................................................3

*Perez v. Palermo Seafood, Inc.*,
  548 F. Supp. 2d 1340 (S.D. Fla. 2008) ...................................................................15

*Viet v. Le*,
  951 F.3d 818 (6th Cir. 2020) ...................................................................................16


**Statutes**

29 U.S.C. 203(m)(2)(A) .....................................................................................................5

29 U.S.C. 203(t) .............................................................................................................5, 7

29 U.S.C. § 206(a) ..............................................................................................................5

Fair Labor Standards Act ............................................................................................ *passim*

Federal Labor Standards Act § 3(m)(2)(A) ...............................................................5, 6, 7

Federal Labor Standards Act § 3(t) ...................................................................................5

Fair Labor Standards Act § 6(a) .......................................................................................5

**Other Authorities**

29 CFR 531.56(e) ..............................................................................................................5

29 CFR § 531 *et seq.* .......................................................................................................15

29 CFR § 531.56(f)(2)(i) ...................................................................................................7

29 CFR § 531.56(f)(2)(ii) ..................................................................................................7

29 CFR § 531.56(f)(3)(i) ...................................................................................................7

29 CFR § 531.56(f)(3)(ii) ..................................................................................................8

29 CFR § 531.56(f)(5)(i) ...................................................................................................8

29 CFR § 531.56(f)(5)(ii) ..................................................................................................8

29 CFR § 531.56(e) ...........................................................................................................6

32 FR 13580-81 .................................................................................................................5

86 FR 32818 ......................................................................................................................7

86 FR 60114 ................................................................................................................5, 6, 7

86 FR 60114 ......................................................................................................................5

Wage and Hour Division Field Operations Handbook 30d00(e) ......................................6

## I.      SUMMARY OF THE ARGUMENT

What is most striking about Plaintiffs' motion is their oversimplification of the issues and facts before this Court. Most notably, Plaintiffs ignore the most basic question of material fact regarding their claims, which is the absence of evidence that the Plaintiffs were performing compensable, non-tip credit work after their last customers "tabbed out" and when they clocked out. For example, Plaintiff's purported (and untimely disclosed) expert merely assumes servers were performing compensable, non-tip credit time worked between the time customers tabbed out and servers clocked out. Indeed, Plaintiffs do not show they were actually working during the period between their customers tabbing out and when they clocked out.

Likewise, Plaintiffs merge distinct legal concepts and gloss over the conflicting evidence and testimony developed in this case. Each store, each manager, and each server are different—for example, the tasks they performed and the amount of time each required to do them varied. Each manager and server Plaintiffs rely on only had personal knowledge of their own restaurant; they do not know the workings of all 53 Ohio Steak 'n Shakes or the 3,615 servers working in them.

By overly simplifying the evidence and legal issues, the Plaintiffs wrongly assert summary judgment is appropriate. Their gloss only hides the significant genuine disputes of material fact and legal issues facing Plaintiffs' claims and it does not resolve them. Thus, summary judgment is not appropriate and should be denied.

## II.     FACTS

### A.      Steak n Shake's Relevant Policies

Steak 'n Shake paid servers under the tip credit provisions of the FLSA and were informed of the requirements of payment methodology under the FLSA. [ECF 46-1, pp. 63-64]. Steak 'n Shake maintains a number of FLSA compliant policies (and in contradiction to Plaintiffs' motion)

bearing on Plaintiffs' claims in this action. Plaintiff Harding admits reviewing and acknowledging these policies. These policies include requirements to (1) accurately record time, (2) clocking in under an appropriate job code when asked to perform a dual job, (3) report any tip adjustments, and (4) increase employees' cash wages to the minimum wage when their tips and hourly wages fell short. [Exhibit 1, Nevin Dec. (previously filed as ECF 46-1)] More specifically, Steak 'n Shake policies state:

- "It is my responsibility as an hourly associate to clock in prior to beginning every work shift and to clock out at the end of every work shift. Accurate clock in and clock out times are essential to ensure that I am paid accurately for all hours worked." [Exhibit 1, Rebekah Nevin Dec., at ¶ 17; ECF 46, pp. 10-11].

- "I further understand that Steak 'n Shake follows all state and federal laws, … ." [*Id.*]

- "I acknowledge that when I work as a Server, I am a 'tipped employee' under the Fair Labor Standards Act (FLSA) and when I work any other position I am not a 'tipped employee.' I agree that I will clock in under the job code that 100% reflects the job function I am performing and, whenever I work as a Server, I will report/declare 100% of the tips received at the end of my shift." [*Id.*].

- "If asked to perform a 'dual job', it is your responsibility to 'clock out' of your Server role and immediately 'clock in' at your production rate (i.e.[,] an hourly minimum wage rate). If prior to performing a 'dual job' you forget or otherwise fail to 'clock out' of your Server rate and immediately 'clock in' to your production rate, you must notify your Manager, Restaurant Manager or General Manager to ensure you are paid correctly for every minute you spend working a 'dual job.' You must never work even one minute of a 'dual job' unless you are clocked in correctly at the applicable minimum wage rate. If instructed to perform a 'dual job' while still on your Server rate, you must refuse to perform the 'dual job' and instead immediately notify your Manager, Restaurant Manager, District Manager, Division President or Human Resources Manager." [*Id.*].

Managers at Steak 'n Shakes would clock a server out of their server rate and clock them back in at their production rate if they needed to: (1) perform non-tipped or non-tip supporting work; or (2) they were performing too much tip-supporting work in a given shift. [*See e.g.*, Exhibit 2, Sheets Dep. pp. 20:5-9; 66:19-68:11; 71:20-25].

**B.**      **Steak 'n Shake's Operations Throughout Ohio.**

During the period at issue in this matter, in Ohio, Defendant owned and operated 53 restaurants and employed approximately 3,650 Servers. [Exhibit 1, Nevin Dec., at ¶ 4]. Before the pandemic, Steak 'n Shake offered a wide variety of food and beverage items for sale to go, via drive-thrus, or for consumption in its dining rooms. [*Id.* at ¶ 16]. Patrons deciding to consume their food in Steak 'n Shake dining rooms could choose between table or counter service. [*Id.*]

Diners choosing table service had their orders taken, and served, by Steak 'n Shake's Servers. *Id*. Shortly after the COVID-19 pandemic began – *i.e.* in May 2020 –  and due to an accompanying reduction in foot traffic, Steak 'n Shake no longer employed servers. [*Id.* at ¶¶ 18, 19]. In fact, Steak 'n Shake revised its operations by eliminating table service, and only offering customers the option of completing their orders via drive-thrus, for delivery, or for curbside service. [*Id.* at ¶ 18].

**III.      ARGUMENT**

**A.      Summary Judgment Standard**

The United States Supreme Court concluded that a party seeking summary judgment bears the initial burden of informing the Court of the bases of the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact regarding the identified bases. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once that burden is satisfied, the non-moving party then offers "specific facts showing that there is a genuine issue for trial." *Id*. (quoting Fed. R. Civ. P. 56(e)).

It is well-settled, in the Sixth Circuit, the District Court must not only view the factual evidence in favor of the non-moving party, but also draw all reasonable inferences in favor of the non-moving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (citing

*Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 616 (6th Cir. 1998)). Summary judgment "will not lie...if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Plaintiffs have failed to demonstrate an absence of a genuine issue of material fact regarding Plaintiffs' claims. Accordingly, summary judgment is inappropriate and Plaintiffs' motion must fail.

### B.   Plaintiffs Offer No Evidence All Plaintiffs Performed Compensable, Non-Tip Credit Work Between Their Last Customer "Tabbing Out" and Plaintiffs Clocking Out.

One of the most fundamental errors in Plaintiffs' motion is their incorrect assertion that all time after their last customer "tabbed out," a server spent performing side work. Servers routinely continued providing services to customers after they tabbed out; for example, refilling customers' drinks and giving them napkins. [Exhibit 2, Sheets Dep., pp. 89:16-90:2; ECF 84-3, Leone Dep., pp. 83:1-84:3]. Plaintiffs' (as well as their untimely disclosed) expert simply assumes without evidentiary support, and contrary to testimony by Steak 'n Shake managers and Plaintiff Phillips, that servers performed compensable, non-tip credit work between the time customers tabbed out and the servers clocked out. [ECF 84, pp. 14-15; ECF 84-6, pp. 4-6]. In other words, there is a genuine issue of material fact whether Plaintiffs were performing compensable work at the minimum wage rate after their customers tabbed out, and the disputed evidence regarding this point, alone, is fatal to Plaintiffs' bid for summary judgment.

### C.   Plaintiffs Incorrectly Meld Non-Tipped Work with Tip Supporting Activity

Before directly addressing the additional insufficiencies of Plaintiffs' motion under the summary judgment standard, it is critical to understand one of the most critical flaws in Plaintiffs motion—*i.e.*, they conflate tip-supporting activity with side work. Merging these concepts is erroneous because both terms have material and distinct meanings under the FLSA.

Section 6(a) of the FLSA requires covered employers to pay nonexempt employees a minimum wage of at least $7.25 per hour. *See* 29 U.S.C. § 206(a); 86 FR 60114. Section 3(m)(2)(A) allows an employer to satisfy a portion of its minimum wage obligation to a "tipped employee" by taking a partial credit, known as a "tip credit," toward the minimum wage based on the amount of tips an employee receives provided that the employer meets certain requirements. *See* 29 U.S.C. 203(m)(2)(A); 86 FR 60114. Section 3(t) defines "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(t).

An employer electing to take a tip credit must pay the tipped employee a direct cash wage of at least $2.13 per hour. 86 FR 60114. Provided the employer meets the tip credit requirements, the employer may then take a credit against its wage obligation for the difference, *i.e.*, up to $5.12 per hour when "an employees' tips are sufficient to fulfill the remainder of the minimum wage." 86 FR 60114.

1.      **Dual Jobs**

Before 2021[1], the Department of Labor's dual jobs regulation recognized an employee may be employed in both a tipped and non-tipped occupation. In a "dual job" situation, the employee is only a "tipped employee" for purposes of section 3(t) when employed in the tipped occupation; an employer may only take a tip credit against its minimum wage obligations for the time the employee works in that tipped occupation. *See* 32 FR 13580-81; 29 CFR 531.56(e); 86 FR 60114. The Department's regulation also recognized an employee working in a tipped occupation may perform related duties that are not "themselves … directed toward producing tips,"

---

[1] Notably, after May 2020, none of the Plaintiffs who have joined this action were employed by Steak n' Shake as tipped servers because Steak n' Shake discontinued employing tipped servers in May 2020. Indeed, nothing in the regulations adopted in 2021 suggest, much less state, they should be given retroactive effect. Consequently, none of the Plaintiffs who have joined this case were employed by Steak n' Shake under the 2021 regulations.

thus distinguishing between employees who have dual jobs and tipped employees who perform "related duties" that do not "themselves" produce tips. 86 FR 60114

For several decades, the Department issued guidance interpreting the dual jobs regulation as it applied to employees performing both tipped and non-tipped duties; first, through a series of Wage and Hour Division (WHD) opinion letters, and then through WHD's Field Operations Handbook (FOH). 86 FR 60114. The 1988 FOH stated the dual jobs regulation at § 531.56(e) allowed "the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (*i.e.*, maintenance and preparatory or closing activities)," if those duties are "incidental" and "generally assigned" to tipped employees. *Id.* at 30d00(e); 86 FR 60114.

To illustrate the types of related, non-tip-producing duties for which employers could take a tip credit, the FOH listed "a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses," the same examples included in § 531.56(e). *Id*. However, when "the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." 86 FR 60114. Consistent with WHD's interpretations elsewhere in the FLSA, the FOH defined a "substantial" amount of time spent performing general preparation or maintenance work as being "in excess of 20 percent," creating a substantial but limited tolerance for this work. *Id*. This guidance (80/20 guidance) recognized that if a tipped employee performs too much related, non-tipped work, the employee is no longer engaged in a tipped occupation. A number of courts deferred to the guidance, and a number did not. 86 FR 60114.

In 2018, the Department rescinded the 80/20 guidance. The Department proposed to amend its dual jobs regulation by clarifying an employee is only engaged in a tipped occupation under 29 U.S.C. 203(t) when he or she performed tip-producing work, or work directly supporting the tip-producing work, provided the directly supporting work was not performed for a substantial amount of time. *See* 86 FR 32818.

The Department's proposal defined work "directly supporting" tip-producing tasks as work assisting a tipped employee's performance of work for which the employee received tips. 86 FR 60114. The proposed regulatory text also explained an employee performed work directly supporting tip-producing work for a substantial amount of time such work (1) exceeded, in the aggregate, 20 percent of the employee's hours worked during the workweek, or (2) was performed for a continuous period of time exceeding 30 minutes. 86 FR 60114.

The goal of the final 2021 rule was to both protect tipped employees and provide clarity and flexibility to employers by addressing the variable situations arising in tipped occupations. The Department recognized a tipped employee's tip-producing services to customers are multi-faceted, and the definition of "tip-producing work" is to be broadly construed to encompass any work performed by a tipped employee providing services to customers for which the tipped employee receives tips. 29 CFR § 531.56(f)(2)(i). Of relevance here, the regulation included the following (non-exhaustive) examples of tip-producing work for servers: (1) providing table service; (2) taking orders; (3) making recommendations; and (4) serving food and drink. 29 CFR § 531.56(f)(2)(ii).

The definition of "directly supporting work" is broad, and includes work performed by the tipped employee in preparation for, or otherwise assisting in, the provision of tip-producing customer service work. 29 CFR § 531.56(f)(3)(i). Of relevance here, the regulation includes the

following, non-exhaustive examples of directly supporting work by servers: (1) dining room prep work, such as refilling salt and pepper shakers and ketchup bottles; (2) rolling silverware; (3) folding napkins; (4) sweeping or vacuuming under tables in the dining area; and (5) setting and bussing tables. 29 CFR § 531.56(f)(3)(ii).

### 2. Side Work

Dual jobs and side work *are not the same*. The definition of work that is not part of the tipped occupation—also commonly referred to as "side work"—includes work that does not provide service to customers for which tipped employees receive tips, and does not support tip-producing activity. 29 CFR § 531.56(f)(5)(i). Of relevance here, the regulation included the following, non-exhaustive) examples of work that is not part of the tipped occupation for servers: (1) preparing food; and (2) cleaning the kitchen or bathrooms. 29 CFR § 531.56(f)(5)(ii).

Here, Plaintiffs combine side work (*e.g.*, cleaning bathrooms) with tip supporting activity (*e.g.*, rolling silverware, bussing tables). By doing so, their motion is legally flawed at the outset. In particular, Plaintiffs' estimates of time performing disqualifying side work are faulty because they also include tip supporting activity. This faulty conception significantly undermines Plaintiffs' entitlement to judgment as a matter of law through numerous knock-on effects, including inflated calculations of hours under the 20 percent rule and improper categorization of certain activities as disqualified side work (*e.g.*, bussing tables).

### D. Plaintiffs, and Managers, Lack Personal Knowledge about Activity at Other Stores, thus, Inherently Creating Genuine Disputes of Material Fact.

Another fatal issue with Plaintiffs' motion is that there are 53 Steak 'n Shakes in Ohio, with multiple managers overseeing 3,615 servers. By way of example, managers' efforts to monitor side work, the actual side work performed (*e.g.*, not all stores required servers to clean bathrooms [*Compare* Exhibit 2, Sheets Dep., pp. 19:15-20:9 *with* Leone Dep. pp. 25:19-26:25]),

and the efforts to clock servers in and out when performing non-tipped activities. Consequently, there is an exponential number of potential combinations of facts and scenarios. Moreover, Plaintiffs lack personal knowledge of the practices and procedures at stores where they did not work, as well as the time spent by other servers performing side work and tip-supporting activities.

Here, the Court has before it conflicting evidence from individual witnesses lacking personal knowledge about stores in Ohio where they did not work and contrasting that with corporate-wide Steak 'n Shake policies and managers' testimony. Accordingly, the combination of genuine issues of material facts and the absence of evidence regarding many Plaintiffs is fatal to their motion seeking summary judgment in favor of all Plaintiffs.[2]

### E.    Plaintiffs are not Entitled to Summary Judgment Regarding Non-Tipped Activity.

Turning next to Plaintiffs' specific request for summary judgment, they first assert all servers working for Steak 'n Shake perform tasks unrelated to their jobs as tipped employees, including maintenance and kitchen work. [ECF 84, pp. 7-11]. This assertion is a material overstatement and is not reflected in the record created in this case. Instead, the evidence here shows servers were sometimes clocked out, and clocked back in, at a production, not a tip-credit, rate of pay while performing maintenance and kitchen work. [Exhibit 2, Sheets Dep. pp. 20:5-9; 66:19-68:11; 71:20-25 ; ECF 84-8, Phillips Dep., pp. 78:20-79:5; 123:18-25; ECF 84-7, Harding Dep., pp. 77:24-80:12]. Moreover, Plaintiffs' supposed universally applicable evidence—i.e., Plaintiffs' Exs. 1-C and Ex. 1-D—only creates to a genuine issue of material fact, thus defeating summary judgment.

---

[2] Recognizing these questions of fact, Steak n' Shake forewent the opportunity to file its own motion requesting summary judgment.

### 1.    Work Task Charts

First, the managers deposed in this matter testified the chart submitted as Ex. 1-C was one they could order from Steak 'n Shake corporate; however, many of them created their own charts. [ECF 84-4, Norris-Nelson Dep., pp. 54:21-55:22; ECF 84-3, Leone Dep., pp. 139:5-140:11; ECF 84-8, Phillips Dep., p. 54:9-16]. As manager Sharon Leone explained, "[t]he responsibilities breakdown isn't the same for every store" because the stores are set up differently, for example "some stores might have a sink in their service station and [she] never [did]." [*Id.*] Likewise manager Sharon Leone insisted her store only required servers to clean bathrooms as part of their *side work—i.e.*, when they were clocked in at a non-tip-credit rate – and servers may have decided the effort to clock out and in was not worth it [ECF 84-3, ECF 84-3, Leone Dep. pp. 27:8-29:22]. Thus, the chart does not establish a single, undisputed set of tasks for all servers at all Steak 'n Shakes in Ohio. Instead, there are genuine disputes about the work performed at each individual Steak 'n Shake Ohio restaurant.

Second, as laid out in the respective charts, tasks were divided between servers. [ECF 84-1, Ex. 1-C]. Each shift may have had a different number of servers, a server might have been assigned to a different colored section (and thus had different tasks each shift), or one Steak 'n Shake may have only had a handful of servers, increasing that server's work load vis-à-vis a server at a Steak 'n Shake staffed with more servers. [ECF 84-1, Ex. 1-C; *see also* ECF 84-7, Harding Dep., p. 107:4-19].

Third, the chart Plaintiffs reference includes tasks that are undeniably tip supporting activities properly paid at the tip-credit rate—*e.g.*, rolling silverware. [ECF 84-1, Ex. 1-C; ECF 84-1, Ex. 1-D]. Hence, Plaintiffs are too reductive in their assertion the chart only reflects side work that must be paid at a non-tip credit rate.

10

Each of these questions are material because they directly implicate whether, and how long, a Steak 'n Shake server may have performed tip-supporting activities and side work. Without the necessary degree of uniformity regarding their claims, there are genuine disputes of material fact about Plaintiffs' claims precluding summary judgment

### 2. Deposition Testimony

Plaintiffs also cite deposition testimony of some, but not all, of the witnesses deposed in this matter. The entirety of the record shows there are numerous genuine disputes of material fact precluding summary judgment

First, Plaintiffs Harding and Phillips asserted they cleaned bathrooms at their server rate. [ECF 84-7, Harding Dep. p. 41:21; ECF 84-8, Phillips Dep., p. 116:2-10]. Some managers maintained their own list of cleaning duties. [ECF 84-8, Phillips Dep., pp. 51:19-52:3].  Likewise, Steak 'n Shake manager Joshua Sheets testified bathrooms were never cleaned by servers (and if they were, he would have clocked in the servers at a production rate). [Exhibit 2, Sheets Dep., pp. 19:15-20:9]. Critically, Plaintiff Harding worked at the store managed by Joshua Sheets, and his testimony directly contradicts hers. [Exhibit 2, Sheets Dep. p. 69:8]. On the other hand, Steak 'n Shake manager Sharon Leone insisted only her store required servers to clean bathrooms as part of their side work. [ECF 84-3, Leone Dep. pp. 25:19-26:25]. Leone told her servers to ask her to clock them out and back in again at their production rate before cleaning the bathrooms, but, servers regularly (but not always) refused to do so. [ECF 84-3, Leone Dep. pp. 27:8-29:22]. Manager Norris-Nelson, for her part, testified, as the manager, she usually cleaned the bathroom; otherwise it was done by production employees—i.e., employees who were never paid at a tip credit rate. [ECF 84-4, Norris-Nelson Dep., pp. 179:17-181:21]. Moreover, as to other cleaning activities, such tasks where short in duration, for example, it took no more than 5-10 minutes to clean windows, and wipe down (not polish) steel handles, taking about "a minute" to do so.

[Exhibit 2, Sheets Dep., pp. 58:19-59:20]. Plaintiffs exaggerate these cleaning duties by referring to them as "maintenance" – there is a distinct difference between cleaning coffee spills off a wall versus wiping down all the walls in the restaurant (for which they would have been clocked in at a production rate) or wiping fingerprints off the windows on a door versus cleaning all the windows at the restaurant with a squeegee and bucket (for which they would have been clocked in at a production rate) [ECF 84-5, Summers Dep., pp. 86:24-90:15].

Second, there is a genuine factual dispute about making milkshakes. Although Plaintiff Harding insists she made milkshakes each shift because there was no one assigned as a milkshake maker [ECF 84-7, Harding Dep., pp. 42:22-25]), other deponents testified servers only occasionally made milkshakes and did so voluntarily to get better tips from their customers. [Exhibit 2, Sheets Dep. p. 21:10-17; ECF 84-3, Leone Dep. pp. 51:19-52:3; 136:14-20; 153:20-154:3]. The deponents also disagree about the amount of time spent making milkshakes and whether the servers were clocked in at their production rate when doing so. Some claim it was a short, rare occurrence, while others allege they made all shakes during a single shift. [*See, e.g.* ECF 84-3, Leone Dep., pp. 147:7-16; 153:20-154:3 (the most she saw was servers making four to five milkshakes on a weekend, "the only time they've ever made any is usually when they've taken the wrong ones and they've screwed up and they're very impatient.") ; ECF 84-8, Phillips Dep., p. 20:4-12 (during morning shifts she made all the milkshakes)]. Further undercutting uniformity, some Steak 'n Shakes had a specific shake-making staff member. [Exhibit 2, Sheets Dep. p. 24:1-7].

Third, Plaintiff Harding testified, at times, she ran the grill, while other deponents testified the only time they saw a server running the grill was to make their own personal food. [*Compare* ECF 84-7, Harding Dep., p. 59:3 *with* Exhibit 2, Sheets Dep. pp. 20:24-21:1; 77:2-4 *and* Nelson-

Norris Dep., p. 170:10-11]. Although a server would rarely work the grill, his or her manager would clock him or her out and in at his or her production rate. [ECF 84-3, Leone Dep., p. 51:5-10].

Fourth, some deponents assert they monitored their servers' time and work tasks, and made sure to clock them out of their server rate, and into their production rate, when they were performing non-tipped work, if they were doing too much tip-supporting activity. [Exhibit 2, Sheets Dep. pp. 20:5-9; 66:19-68:11; 71:20-25].  Manager Joshua Sheets testified servers tracked their production time by checking it off their task list on a shift-by-shift basis. [Exhibit 2, Sheets Dep. p. 72:1-16]. Harding admits to keeping track of time spent on contemporaneous side work, but, she never wrote it down; if she had concerns with her pay she didn't raise them despite tracking her side work and tip-supporting work. [ECF 84-7, Harding Dep., p. 63:5-17]. Others claim they did not or do not recall if they recorded side work. [ECF 84-4, Norris-Nelson Dep., p. 108:20]. Importantly, Harding admits she sometimes had her manager clock her in at a production rate for her side work. [ECF 84-7, Harding Dep., p. 41:8-13], and her pay records reflect she did so. [ECF 84-7, Harding Dep., pp. 77:18-80:22]. Plaintiff Phillips admits, under one general manager, she received production pay for side work. [ECF 84-8, Phillips Dep., pp. 78:20-79:5]. While managers did not write down the minutes spent performing side work by a server, that does not mean they were not tracking the work performed by their servers. [*See, e.g.* Exhibit 2, Sheets Dep. pp. 20:5-9; 66:19-68:11; 71:20-25; ECF 84-5, Summers Dep., pp. 113:25-114:4].

Fifth, some deponents claimed servers washed dishes and silverware. [ECF 84-7, Harding Dep. p. 45:1-9; ECF 84-4, Norris-Nelson Dep. p. 69:10-15]. However, Harding admitted she did so to increase her tips. [ECF 84-7, Harding Dep., p. 45:21-24].  [*See also* ECF 84-4, Norris-Nelson Dep., p. 69:10-15; ECF 84-3, Leone Dep., p. 52:9-12 (recognizing dishes may have been washed

by servers because the servers were impatient)]. The record also reflects servers were not observed washing dishes, or some restaurants have specific dishwasher staff – Harding, for example, suggests that she washed dishes when they did not have a dishwasher scheduled. [ECF 84-7, Harding Dep., p. 45:8-9; Exhibit 2, Sheets Dep., p. 20:22-23; ECF 84-4, Norris-Nelson Dep., p. 68:5].

Sixth, there is no uniformity in the length of time deponents claim it took for side work to be completed. Manager Norris-Nelson testified side work took no more than "half an hour" [ECF 84-4, Norris-Nelson Dep., pp. 120:24-121:1]. Meanwhile, manager Joshua Sheets testified it took 30 to 45 minutes [Exhibit 2, Sheets Dep., pp. 37:11-38-3]. Manager Sharon Leone says it took "45 minutes to an hour fifteen" minutes [ECF 84-3, Leone Dep., p. 64:7-16]. In contrast, Plaintiff Harding claimed rolling silverware alone took "1-2 hours", but the time varied by day or shift. [ECF 84-7, Harding Dep., pp. 47:1-3; 107:11-15]. These differences in estimated time are material because, according to Plaintiffs, whether the tip credit was lost depended on the amount, or percentage, of servers' time spent performing various tasks.

Ultimately, the record regarding alleged side work and non-tip supporting activity, whether the nature of such tasks or the amount of time spent doing them (which is critical to the alleged compensability of such time at a non-tip credit rate), is anything but uniform across the 53 Steak 'n Shakes restaurants in Ohio. The litany of genuine disputes about side work and tip supporting activity performed by servers is material to their claims and preclude summary judgment.

### 3.    Mt. Clemens does not Justify Summary Judgment.

Plaintiffs also attempt to sidestep their evidentiary issues by erroneously relying on the *Mt. Clemens* standard. This standard is inapposite to the Motion pending before the Court. The *Mt. Clemens* standard cited by Plaintiffs only applies when there are *no* records reflecting the hours worked by employees. *See, e.g. Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1010 (6th Cir. 2016),

cert. granted, judgment vacated, 196 L. Ed. 2d 471 (Dec. 12, 2016) (applying the *Mt. Clemens* framework to case where handwritten timesheets were not available in an overtime case); *Fulkerson v. Yaskawa Am., Inc.*, 3:13-CV-130, 2014 WL 4638982, at *6 (S.D. Ohio Sept. 16, 2014) (applying the *Mt. Clemens* framework to a case where time records did not reflect all hours worked in an overtime case). This case stands in contrast to that scenario.

Plaintiffs have not argued, because they cannot, that Steak 'n Shake did not maintain required records of time worked. In fact, Plaintiffs used such records to feed into their untimely damage model. Instead, Plaintiffs mistakenly imply, without citing any supporting law directly on point, that Steak 'n Shake had a duty to record the actual amount of time spent on purportedly non-tipped work. Importantly, *nothing in the FLSA, as well as its implementing regulations*, required Steak 'n Shake to record or track servers' side work or tip supporting activity. 29 CFR § 531 *et seq.* (not requiring record keeping of the amount of time a tipped employee is performing side work or tip supporting activity); Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (not referencing a recordkeeping requirement to record side work or tip supporting activity)

The standard applicable here is that an employee filing suit under the FLSA for unpaid minimum wages or unpaid overtime compensation and liquidated damages bears the initial burden of proving she performed uncompensated work. *Perez v. Palermo Seafood, Inc.*, 548 F. Supp. 2d 1340, 1346 (S.D. Fla. 2008). Thus, to establish a universal violation of the 20 percent rule, Plaintiffs have the burden of proving they spent more than 20 percent of their time performing non-tipped duties in a workweek. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (FLSA plaintiffs must "prove[] that . . . [they have] in fact performed work for which [they were] improperly compensated" and "produce[] sufficient evidence to show the amount and extent

15

of that work as a matter of just and reasonable inference") (emphasis added); *see also Fast v. Applebee's Intern. Inc.*, 638 F.3d 872, 882 (8th Cir. 2011) (finding in a 20% rule or dual occupation claim, "the initial burden [is] on the employees to establish they worked hours for which they were not properly paid"); *Crate v. Q's Rest. Grp. LLC*, 2014 U.S. Dist. LEXIS 61360, at *15 (M.D. Fla. May 2, 2014) (finding the plaintiffs must show discrete time periods when they engaged in related, non-tipped activities for more than 20% of their worktime); *Viet v. Le*, 951 F.3d 818, 824-25 (6th Cir. 2020) (a plaintiff's testimony that he "typically worked 60 hours per week" was not sufficiently detailed to support his burden of proof on summary judgment for overtime claim). Plaintiffs have not met this burden.

In their depositions, Plaintiffs Harding and Phillips repeatedly admitted they do not know how much time, or what percentage of their time, they spent performing tip supporting activities, nor were they able to testify about shifts or workweeks when they exceeded the 20% threshold – they must instead rely on estimates. [*E.g.* ECF 84-7, Harding Dep. pp. 63:1-64:5; ECF 84-8, Phillips Dep. p. 73:2]. When asked to estimate how much time they spent doing side work during an average shift, their answers varied wildly – Plaintiff Phillips estimated an hour of side work, or, what amounts to 14 percent of her seven to eight hour shift [ECF 84-8, Phillips Dep., p. 73:2] whereas Plaintiff Harding provides no temporal estimate, instead insisting she spent "40 to 50 percent" of her time doing side work [ECF 84-7, Harding Dep., p. 43:16-19]. Thus, Plaintiff Phillips's own estimates show she did not work more than 20% of her time doing side work during an average shift. *See Ash v. Sambodromo, LLC,* 676 F. Supp. 2d 1360, 1367 (S.D. Fla. 2009) (concluding the plaintiff did not spend more than 20% of her time doing side work and, therefore, the tip credit was properly taken by the employer). For her part, Plaintiff Hardings' claim that she spent 40 to 50 percent of her time doing side work is unlikely (that she worked approximately 4

16

hours of her shift doing side work) and is likely hyperbolic – it does not comport with Plaintiff Phillips's estimate nor does it comport with the testimony of one of Plaintiff Harding's managers, Joshua Sheets.  At a minimum, that Plaintiffs Harding and Phillips do not have comparable answers shows an additional genuine dispute of material fact exists. Moreover, Plaintiffs have not shown that their supposed side work was performed in increments of 30 continuous minutes or more.

*Mt. Clemens* does not justify summary judgment here. In fact, it does not apply because Steak 'n Shake recorded the amount of time Plaintiffs worked, and nothing in the FLSA required Steak 'n Shake to record non-tipped work. Furthermore, even Plaintiffs' evidence reveals they cannot show for themselves, or anyone else who has joined this action, they exceeded the thresholds they argue entitled them to wages at a non-tip credit rate.

## IV.  CONCLUSION

Plaintiffs cannot, as they have tried, gloss over the contours of the record showing there are materials facts precluding summary judgment in their favor. There are numerous discrepancies and conflicts between the testimony and evidence before this Court, including directly conflicting testimony among Plaintiffs, as well as between Plaintiffs and Steak n' Shake's managers. Furthermore, Plaintiffs' arguments are fundamentally flawed by their conflation of side work with tip-supporting activity, as well as the time the supposedly spent performing each. These disputed facts involve material issues, thus precluding summary judgment.

Respectfully submitted,

**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**

/s/ *Patrick F. Hulla*
Patrick F. Hulla        MO #41745
700 West 47th Street, Suite 500
Kansas City, MO 64112
Telephone: 816.471.1301
Facsimile: 816.471.1303
patrick.hulla@ogletree.com

Mathew A. Parker (0093231)
20 South Third Street, Suite 210
Columbus, OH 43215
Telephone: 614.494.0420
Facsimile: 614.633.1455
mathew.parker@ogletree.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2023 a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Patrick F. Hulla
Patrick F. Hulla

*Attorney for Defendant*

18