UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | | |
|---|---|---|
| EMILY HARDING, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | CASE NO. 1:21-CV-1212 |
| Plaintiff, | ) ) | |
| v. | ) ) | JUDGE: BRIDGET MEEHAN BRENNAN |
| STEAK N SHAKE, INC. | ) ) ) | |
| Defendant. | ) ) | |

## CONSENT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff Emily Harding ("Named Plaintiff"), on behalf of herself and on behalf of all others who have joined this case as opt-in plaintiffs (the "Opt-in Plaintiffs," and collectively with the Named Plaintiff, "Plaintiffs"), file this Consent Motion for Approval of Settlement and would respectfully show the Court the following:

## I.       INTRODUCTION

This case concerns a collective action under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWS"). Plaintiffs worked as servers for Defendant.  They alleged that they were not paid at the minimum wage rate for all hours that they worked. (*See* Dkt. 1).  Specifically, Plaintiffs alleged that they and other tipped workers were required to perform work that was not related to their tipped occupation while being paid less than the minimum wage and also spent more than 20% of the time at work per week performing duties that did not generate tips but were related to their tipped occupation.  Defendant denied the allegations and asserted that the Plaintiffs and all other tipped workers were correctly paid in compliance with the law.

Plaintiffs and Defendant have now reached a settlement of this dispute concerning allegations of unpaid wages under the FLSA and OMFWS.  The settlement provides compensation to current and/or former employees of Defendant who were alleged to not have been wages at the minimum wage rate for all required hours.  Plaintiffs now ask the Court to approve the Parties' settlement.

## II.      PROCEDURAL BACKGROUND

On June 21, 2021, Plaintiff Betsy Ramos filed this collective action lawsuit related to her work at Steak N Shake. (Dkt. 1).  Later, Emily Harding was substituted as the Named Plaintiff in this case and brought the same claims related to her work at Steak N Shake. (Dkt. 7). Specifically, this lawsuit alleges that the Plaintiffs were paid at an hourly rate less than the minimum wage when it was unlawful to do so. (*See id*.)  Under the FLSA and OMFWS, all non-exempt employees are required to be paid at an hourly rate that is no less than the minimum wage. *See, e.g.,* 29 U.S.C. § 206.  However, Plaintiffs asserted that Defendant paid Plaintiffs less than the minimum wage by relying upon a provision in the FLSA that allows an employer of workers who receive tips from customers to claim a credit based upon the tips the employee receives from customers. *See* 29 U.S.C. § 203(m)(2).  However, an employer cannot claim this "tip credit for hours that [are not] tip-credit eligible." *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Rafferty v. Denny's, Inc.*, 13 F. 4th 1166 (11th Cir. 2021).

"In some situations an employee is employed in dual jobs," meaning that the employee has two different jobs. *See* 29 C.F.R. § 531.56(e).  In that situation, no tip credit can be taken for the employee's hours of employment in the occupation that does not generate tips. *See id.*  The current dual jobs regulation states:

> In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, **is a tipped employee only with respect**

2

**to his employment as a waiter**… **and no tip credit can be taken for his hours of employment in his occupation of maintenance man**.

*Id*. (emphasis added).

On February 11, 2022, this Court certified this case as a collective action. (Dkt. 56).  The Court certified the following collective: "All current and former tipped employees who worked for Defendant for at least one week in Ohio during the three-year period prior to the date the Court grants conditional certification to the present." (*Id*.).

The Notice of this lawsuit was then mailed to the Class Members and individuals joined this case by signing and returning a consent form to join this lawsuit.  (Dkt. 56-1).

After the notice period ended, the Parties engaged in discovery.  Defendant produced the pay records, time records, and point of sale records for the Plaintiffs along with Defendant's policy documents.  Additionally, the Parties completed nine depositions.

With information gained through discovery, Plaintiffs retained Liesl Fox, Ph.D. as an expert in this case. (*See* Exhibit. "2" – Expert Report of Dr. Fox).  Dr. Fox identified the periods of time spent by the Plaintiffs working for Defendant without active customers while being paid below the minimum wage. (*See id*.)  The point of sale data shows the opening and closing time of each customer transaction. (*See id*.)  The time clock data shows when each tipped worker clocked in and clocked out each shift. (*See id*.)  Dr. Fox reviewed the transaction open times and the transaction close times for each shift when a Plaintiff worked for Defendant and compared that data to each Plaintiff's clock-in times and clock-out times for the shift. (*See id*.)  She identified all non-tipped periods of time that occurred during the shift: between the shift clock-in time and the first check open time, between the last check close time and the shift clock-out time, and intervals of inactivity between a check close time and the next check open time. (*See id*.)  In other words, she identified the weeks when the total period of time without active customer transactions

exceeded 20 percent of the total number of hours worked in a week. (*See id.*)  She then calculated the potential damages that could be owed. (*See id.*)  Under the 80/20 claim brought by Plaintiffs, the amount of back wages were $82,468.98. (*See id.*)

The Parties engaged in significant discovery and after completing discovery, Plaintiffs filed their Motion for Summary Judgment. (Dkt. 83).  Plaintiffs sought partial summary judgment on issues pertaining to liability. (*See id.*)  On August 15, 2024, the Court granted in part Plaintiffs' Motion for Summary Judgment. (Dkt. 91).

Afterwards, the Parties agreed to attend mediation.  On November 12, 2024, mediation was held with Magistrate Judge Armstrong.  With Magistrate Judge Armstrong's efforts and guidance, the Parties were able to reach a settlement for $372,000.00.  The final terms of the settlement are reflected in the attached Settlement Agreement, which is labeled Exhibit "1". (*See* Ex. "1.")

### III.    <u>SUMMARY OF SETTLEMENT TERMS</u>

The settlement provides monetary compensation of $372,000 to 149 Plaintiffs. Payments to each Plaintiff will be based upon the actual damages as calculated using Defendant's payroll and time keeping data and with the use of an expert statistician.  There will be two payments made by Defendant.  An initial payment of 50% of the total settlement will be made within 24 days after Court approval (in the event the Court approves the settlement) and the remaining 50% of the settlement will be paid 60 days thereafter.

The release of claims for all Opt-In Plaintiffs is a limited release of wage and hour claims and not a general release of all employment related claims.  Additionally, there is no reversion to Defendant and all Plaintiffs will be eligible to receive a direct payment from Defendant without the requirement to complete a claim form.  Thus, every Plaintiff will be eligible to receive a payment from the settlement and the process to distribute the payments is simple and easy.

4

As part of the settlement, the Parties agreed to a Service Payment for Named Plaintiff Harding. Otherwise known as a "service award" or "incentive award," this amount is in addition to her pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the Plaintiffs, the valuable contributions Ms. Harding made throughout the litigation, and her active participation throughout this lawsuit, including responding to written discovery, appearing at a deposition, and attending mediation, Plaintiffs' Counsel submits that the incentive award is reasonable.

The Parties have also agreed that Plaintiffs' Counsel would seek reimbursement for expenses as well as an award of attorneys' fees in the amount of 38% of the settlement amount. Therefore, the breakdown of the settlement funds is as follows:

| | |
|---|---|
| Total Settlement | $372,000 |
| Attorney's Fees | $141,360.00 |
| Litigation Costs | $37,279.56 |
| Third Party Administrator | Not to exceed $25,000.00 |
| Service Award | $10,000.00 |
| Net Settlement Fund | $158,360.44 |

The Net Settlement Fund to the Plaintiffs is approximately 190% of the back wages owed to the Plaintiffs under the 80/20 claim.

## IV.       THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As explained below, and as shown in the attached Declaration of Don J. Foty (*See* Exhibit "3"), Court approval is warranted on all scores.

A.      **The Settlement satisfies the standard for approval.**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute"), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946). "To approve a settlement agreement, a court must conclude that it is a 'fair, reasonable, and adequate' resolution of a bona fide legal dispute." *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, *1 (S.D. Ohio Nov. 8, 2018) (quoting *Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

"The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Andrus v. DenOne, LLC*, No. 1:19-cv-00259-PAB, 2019 WL 13195500, *1 (N.D. Ohio 2019) (citing *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *3 (E.D. Ky. Oct. 23, 2008)). Other factors Courts consider are: "(1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the plaintiff's likelihood of success on the merits; and (5) the public interest in settlement." *Brittmon*, 2018 WL 7889855, *1; *see also Andrus*, 2019 WL 13195500, *1. "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Brittmon,* 2018 WL 7889855, *1 (quoting *Gentrup v. Renovo Servs., LLC*, No. 07-cv-430, 2011 WL 2532922, at *8 (S.D. Ohio June 24, 2011). Here, all factors favor approval.

6

As an initial matter, a *bona fide* dispute certainly exists between the parties. In fact, there are several issues in dispute—the outcome of which remains uncertain—that could significantly impact this case if it were further litigated. Although Plaintiffs believe the claims against Defendant for are meritorious, Defendant denies Plaintiffs' allegations and heavily contests the amount of damages that are owed. In particular, Defendant believes that the recent *Restaurant Law Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163 (5th Cir. 2024) either eliminates Plaintiffs' claims entirely, or severely limits the claims available to Plaintiffs.   Defendant also believes that there is no evidence to support Plaintiffs' 80/20 claim – if that claim is still viable.  Importantly, the Court denied Plaintiffs' Motion for Summary Judgment as to Plaintiffs' 80/20 claim.  With respect to Plaintiffs' claim that Defendant required Plaintiffs to perform work unrelated to their jobs as servers, Defendant still maintains that the amount of damages owed for this claim is far lower than the amount sought by Plaintiffs.  Further, the Parties also dispute whether Defendant can prevail on its good faith defense that would preclude an award of liquidated damages, and whether Defendant's conduct was willful, and thus, whether the two-year or three-year statute of limitations applies.  Thus, a *bona fide* dispute certainly exists.

Moreover, all other factors likewise favor approval.

First, there is no risk of fraud or collusion as the settlement was negotiated at arms-length by experienced counsel with the assistance of this Honorable Court. *Moore v. Aerotek, Inc.,* No. 2:15-CV-2701, 2017 WL 2838148, at *3 (S.D. Ohio June 30, 2017), *report and recommendation adopted*, No. 2:15-CV-2701, 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion.").

Second, "wage and hour class and collective actions, such as this, are inherently complex

7

and time-consuming." *Arledge v. Domino's Pizza, Inc.,* No. 3:16-cv-386, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) (citing *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014)). This case is certainly no exception. As discussed above, several factual and legal issues are in dispute in this case. If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. (Exhibit "3" – Declaration of Don Foty at ¶ 34.) The Parties would be required to prepare for and complete a trial on the merits and likely appeals thereafter. (*Id*.) Indeed, a trial of this matter would be complex and factually intensive with respect to both liability and damages. (*Id*.)

Third, the Parties completed fact discovery in this case, which was indeed, extensive. The Parties engaged in substantial fact discovery both before and after conditional certification. Indeed, the Parties completed nine depositions, completed significant written discovery, and Plaintiffs engaged in expert discovery. After engaging in discovery, the Parties briefed summary judgment. It was only after a summary judgment decision was issued that the Parties reached a settlement. Therefore, at the time of mediation, all aspects of this case were well understood by both sides. Thus, this factor also favors approval.

Fourth, the likelihood of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery weighs heavily in favor of approval. As noted above, a *bona fide* dispute exists as to whether Defendant has liability for all claims brought by Plaintiffs and the amount of damages that are owed. Had this case not been settled, a trial would have taken place and either side would have appealed a decision adverse to them. There was no guarantee of a recovery to Plaintiffs or the amount of any such recovery. The Settlement, on the other hand, guarantees Plaintiffs a substantial recovery for all of their claims and allegations. The total Settlement amount ($372,000.00) is approximately 450% of the amount of damages as calculated

by Dr. Fox for Plaintiffs' 80/20 claim. Further, even after the payment of all fees, costs, and expenses, Plaintiffs are still recovering nearly 200% of the amount of unpaid wages on the three year lookback period for willful violations. This recovery is significant by any measure.

Fifth, public policy favors settlement of class and collective action lawsuits. *See Arledge v. Domino's Pizza, Inc.,* No. 3:16-cv-386, 2018 WL 5023950, *2 (S.D. Ohio Oct. 17, 2018) (citing *Swigart*, 2014 WL 3447947, *4); *Barnes v. Winking Lizard, Inc.,* No. 1:18CV952, 2019 WL 1614822, *4 (N.D. Ohio Mar. 26, 2019).

Moreover, Plaintiffs are represented by experienced counsel, who agree that the settlement is a fair, reasonable, and adequate compromise of disputed claims, and is in the best interests of the Plaintiffs. (*See* Ex. "3"). Submitted in support of the settlement is the Declaration of Don Foty.

Accordingly, the Settlement is certainly fair and reasonable and should be approved.

**B.**     **The agreed upon payment to Plaintiffs' Counsel for Attorneys' Fees and Expenses should be approved.**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). As the Sixth Circuit stated, the provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). "There is no numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. Thus, it is not uncommon for fee awards to exceed the amount recovered by plaintiffs in lost wages." *Schraufl v. Riverside Local School Dist.*,

NO. 1:19-CV-00175, 2019 WL 13171421, *1 (N.D. Ohio 2019) (emphasis added) (citing *Perrin v. John B. Webb & Assocs.*, Case No. 604CV399, 2005 WL 2465022, *4 (M.D. Fla. Oct. 6, 2005)). Here, Plaintiffs' Counsel are seeking attorneys' fees that is less than their loadstar in this case. (*See* Ex. "3.")

Indeed, the requested payment to Plaintiffs' Counsel for attorneys' fees in the amount of $141,360.00—which equals 38% of the total recovery—is lower than what other courts have approved in the Sixth Circuit. Courts in this Circuit and elsewhere have frequently approved **40% or more** of the total settlement amount for attorneys' fees. *See*, e.g., *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) (Awarding Plaintiffs' counsel 40% of total settlement amount for attorney fees plus costs); *Rodriguez v. Life Time Fitness*, No. 2:18-cv-01123, 2021 WL 9096176 (S.D. Ohio May 17, 2021) (awarding Plaintiffs' counsel 40% of the settlement fund); *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52 percent of maximum settlement fund to counsel in wage and hour case); *Mulroy v. National Water Main Cleaning Co.*, No. 12–3669, 2014 WL 7051778, at *6-*7 (D. N.J. Dec. 12, 2014) (awarding 40% of the total settlement amount to plaintiffs' counsel, and stating only a brief review of the Gunter factors is required to confirm that the attorneys' fee sought is reasonable."); *Gordon v. Ohio Security Systems, Inc.,* No. 1:21-cv-01956 (N.D. Ohio March 6, 2023) (approving $50,000 payment to plaintiffs' counsel for fees' and $8,284.10 for expenses where the sum of the individual payments to class amounted to $38,715.90 in settlement of FLSA collective action for unpaid overtime in connection with pre-shift work (Doc. 35, Motion for Approval; Doc. 36, Order approving settlement)); *Thompson v. Menorah Park Center for Senior Living Bet Moshav Zekenim Hadati*, No. 1:17-cv-02580 (N.D. Ohio Oct. 21, 2021) (approving $75,000.00 payment to plaintiffs' counsel for attorneys' fees and $9,691.92 for expenses were sum of individual payments

to class amounted to $58,308.08 in settlement of FLSA collective action for unpaid overtime in connection with post-shift work (Doc. 70, Motion for Approval; Doc 71, Order approving settlement)).

Here, the attorneys' fees requested are reasonable in light of the substantial benefit achieved for the Plaintiffs, whose recovery, ***after*** the deduction of the requested attorneys' fees and expenses, and the service payment to Named Plaintiff Harding, equals approximately 190% of the alleged wages owed.

"In the Sixth Circuit, the recovery in wage and hour cases is typically 7-11%." *Myres v. Hopebridge, LLC*, No. 2:20-CV-5390, 2023 WL 2399056, *5 (S.D. Ohio Feb. 21, 2023); *see also*, *Smith v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, *3 (E.D. Mich. May 31, 2022) (same); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, *8 (N.D. Ohio Mar. 8, 2010) (same). In *Dillworth*, this Court concluded that a recovery of one-third of the wages allegedly owed, ***before*** deducting attorney's fees and costs, is "well above" average. *Dillworth*, 2010 WL 776933, at *8. In *Rotuna v. W. Customer Mgt. Group, LLC*, 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010), this Court characterized a recovery of 25% to 75% of claimed wages as "exceptional." *Id*. at *8. Measured against that standard, the Settlement in this case is beyond exceptional.

Moreover, the services rendered to the Plaintiffs reflect the substantial experience Plaintiffs' Counsel have with litigating collective and class actions. The legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had viable claims. Additionally, other lawyers may not have had the expertise to

11

ascertain and evaluate the possible damage awards available to the Plaintiffs in this case.  Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Plaintiffs.

Moreover, this case has been in litigation for over three years.  During that time, Plaintiffs' Counsel expended substantial time and effort to pursuing the claims on behalf of Plaintiffs. Plaintiffs submitted briefing as to the Motion for Conditional Certification (Dkt. 37), oversaw the sending of the Class Notice to the Class Members, completed nine depositions, worked with Dr. Fox to finalize her expert report, and briefed Plaintiffs' Motion for Partial Summary Judgment. (Dkt. 83, 84).  Next step for this case was trial, which would have been expensive and time consuming. Moreover, because the attorneys' fees in this case were entirely contingent upon the success of this litigation, Plaintiffs' Counsel expended such substantial time and effort, without any guarantee of compensation.

To that end, the risk of non-payment, or a significantly reduced payment, further supports the amount requested here. Had this case not settled, Plaintiffs' Counsel would have continued to vigorously litigate the case, including presenting this case at trial and handling any appeals, without any promise of success and compensation. If Plaintiffs lost, Plaintiffs' Counsel would not have been paid anything despite Plaintiffs' Counsel's years of work on this case.

The Settlement, on the other hand, provides guaranteed relief to Plaintiffs who, even *after* the deduction of attorneys' fees and costs, are still recovering *more* than the unpaid wages they are allegedly owed.

Further, the litigation expenses sought to be reimbursed are reasonable. Plaintiffs' Counsel is seeking reimbursement of $37,279.56 for expenses, all of which were incurred during the course of the litigation.  The breakdown of litigation costs are as follows:

- Filing Fee: $402

- Notice Costs: $3,599.86

- Depositions: $13,084.69

- Expert Costs: $11,068.75

- Printing Costs: $2,309.5

- Mediation: $4,000.00

- Research/Data Entry: $410.18

- Travel Costs: $1,403.84

- Meals: $501.04

- Misc: $499.70

Accordingly, the requested attorneys' fees and reimbursement for expenses should be approved.

### C.      The Service Award Payments to Representative Plaintiffs should be approved.

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, *2 (N.D. Ohio Feb. 9, 2024). Courts routinely authorize incentive awards as efficacious ways of encouraging individuals to serve as representative plaintiffs and rewarding them for their efforts taken on behalf of the class or collective they represent. *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio March 8, 2010); *McFarlin v. Word Enterprises, LLC*, No. 16-CV-12536, 2020 WL 2745300, at *2 (E.D. Mich. May 27, 2020); *Sand v. Greenberg*, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of

13

"blacklisting").

Here, the Named Plaintiff provided substantial and effective services in this case. Ms. Harding provided extensive and critical factual information to Plaintiffs' Counsel and faithfully engaged in several and extensive communications with Plaintiffs' Counsel. Ms. Harding actively participated in discovery (including responding to written discovery requests and appearing for her deposition), provided important information to Plaintiffs' Counsel, and actively participated during the settlement conference in this case.

Moreover, Ms. Harding risked her employment reputation by subjecting herself to the responsibilities of serving as the Named Plaintiff in this lawsuit. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (incentive awards are "particularly appropriate in the employment context … [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *Mejia v. KVK-Tech, Inc.*, No. 2:19-cv-4841, 2020 WL 5292074, *3 (E.D. Pa. Sept. 4, 2020) (Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken"); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, *1 ("former employees put in jeopardy their ability to depend on the employer

14

for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*

Further, the amount requested, $10,000, is reasonable and in line with what courts in this Circuit have approved in similar cases. *See e.g.*, *Miller v. Charter Nex Films*, No. 2:18-cv-1341, 2020 WL 13661785, *1 (S.D. Ohio Sept. 8, 2020) (approving service award of $3,000 to each named plaintiff where total settlement amount was $140,000); *Dillworth v. Case Farms Processing, Inc.,* No. 5:08–cv–1694, 2010 WL 776933, *7 (N.D. Ohio Mar.8, 2010) (approving service award of $6,000 to one named Plaintiff and $4,000 to the other named plaintiff); *McFarlin v. Word Enterprises, LLC*, No. 16-CV-12536, 2020 WL 2745300, *2 (E.D. Mich. May 27, 2020) (approving service awards in the amount of $10,000.00 to one named Plaintiff and $5,000.00 to the two other Named Plaintiffs).

## V.    <u>CONCLUSION</u>

For the forgoing reasons, the Parties respectfully request that this Court approve the settlement.

Respectfully submitted,

*/s/ Don J. Foty*_____
Don J. Foty
HODGES & FOTY, L.L.P.
Texas State Bar No. 24050022
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@hftrialfirm.com

And

Anthony J. Lazzaro (0077962)
Lori M. Griffin (0085241)
The Heritage Building, Suite 250

15

34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, a true and correct copy of this document was filed with the court through the court's electronic case filing system which will provide a copy of this document to all sides by email.

/s/___Don J. Foty_____
Attorney for Plaintiff


## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Counsel for Defendant and Defendant consents to the relief sought in this Motion.

/s/___Don J. Foty_____
Attorney for Plaintiff

16