## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("this Agreement") is entered into by and between Named Plaintiff Emily Harding ("Named Plaintiff"), on behalf of herself and all "Opt-In Plaintiffs" (collectively "Plaintiffs") as listed in Exhibit "1," and Defendant Steak N Shake, Inc. ("SNS"). Named Plaintiff, on behalf of herself and all Opt-In Plaintiffs, and SNS shall be collectively referred to herein as "the Parties."

## RECITALS

WHEREAS, Harding, who was substituted for prior named plaintiff Ramos, sued SNS in the lawsuit originally styled *Ramos v. Steak 'N Shake, Inc.*, in the United States District Court for the Northern District of Ohio, Case No. 1:21-cv-01212-BMB (the "Lawsuit") asserting claims for alleged unpaid wages under the Fair Labor Standards Act ("FLSA");

WHEREAS, Named Plaintiff and each individual who joined the Lawsuit filed a consent to join the Lawsuit.

WHEREAS, the individuals who filed consent forms to join the Lawsuit and whose consent forms remain filed and not withdrawn as of the date of this Agreement are referred to as "Opt-In Plaintiffs" and listed on Exhibit "1";

WHEREAS, on November 9, 2024, the Parties participated in a mediation with mediator Magistrate Judge Jennifer Dowdell Armstrong; and thereafter the Parties continued negotiations with the assistance of Magistrate Judge Jennifer Dowdell Armstrong;

WHEREAS, the Parties recognize the outcome in the Lawsuit is uncertain and achieving a result through the litigation process would require substantial additional risk, discovery, time, and expense;

WHEREAS, the Parties want to compromise and settle fully and finally the claims as set forth in Section II of this Agreement, including all claims asserted in the Lawsuit and those wage and hour claims that could have been asserted under the FLSA, state, or local law;

WHEREAS, the Parties engaged in substantial investigation and litigation, including discovery and contested motions, including Named Plaintiff's motion for summary judgment , and thereby arrived at an agreement to resolve the Lawsuit on the basis described in this Agreement;

WHEREAS, Named Plaintiff and Plaintiff's Counsel have conducted an investigation and evaluation of the facts and law, including discovery, relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the resolution of the Lawsuit as provided in this Agreement is in their best interests and the best interests of the Opt-In Plaintiffs, and the terms set forth in this Settlement represent, and constitute, a fair, reasonable, and adequate resolution with respect to amounts Plaintiffs allege are due and owing in connection with the Lawsuit; and

**EXHIIBT "1"**

WHEREAS, the Parties, intending to be legally bound, and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

NOW, THEREFORE, for and in consideration of the above and the additional covenants and agreements set forth herein, as well as the good and valuable consideration provided herein, the Parties expressly agree as follows:

## I. TERMS OF SETTLEMENT

**A. Motion for Approval of Settlement and Dismissal with Prejudice.** Within ten (10) business days of the Parties' execution of this Agreement, Plaintiffs will file a Consent Motion for Approval of Settlement and Dismissal with Prejudice, asking the Court to approve the Parties' settlement and dismiss the Lawsuit with prejudice. The Court shall retain jurisdiction to enforce the terms of the settlement. If the Agreement is not finally approved by the Court, the Parties will work together, in good faith, to structure an agreement that will meet Court approval. If they are unable to do so, this Agreement will no longer have any effect, any settlement payments shall remain property of SNS, and the Parties' litigation positions will revert to the status *quo ante* before execution of this Agreement with no waiver, in any way, of their claims or defenses in the Lawsuit, including, but not limited to, defenses to the merits of Plaintiffs' claims and to collective action certification.

**B. Gross Settlement.** In exchange for the release identified in Section II, as well as the dismissal of this Lawsuit with prejudice, SNS will pay the total sum of Three Hundred and Seventy-Two Thousand Dollars and no cents ($372,000). This amount shall be referred to as the "Maximum Gross Settlement." However, this amount excludes employer-side taxes that SNS owes on the portion of the settlement classified as W-2 wages, which shall be paid in addition to the settlement amount stated herein.

**C. Net Settlement Fund.** The Net Settlement Fund shall be the amount payable to the Named Plaintiff and Opt-In Plaintiffs. Plaintiffs' Counsel shall provide the distribution amongst the Named Plaintiff and Opt-In Plaintiffs to the settlement administrator following court approval of the settlement. The Net Settlement Fund shall be the net amount remaining after deducting from the Maximum Gross Settlement (1) attorney's fees and costs, (2) service payments, and (3) settlement administrator costs not to exceed $25,000.00. The Parties agree Named Plaintiff and Plaintiffs' Counsel shall be solely responsible for allocating the Net Settlement Fund between Named Plaintiff and the Opt-In Plaintiffs and will do so based on the number of weeks worked by each Named Plaintiff and Opt-In Plaintiff within the applicable limitations period, with a minimum amount of $150 paid to each of the Plaintiffs.

**D. Settlement Administrator.** The settlement administrator shall be responsible for (1) establishing a qualified settlement fund and qualified settlement fund account, and determining and finalizing the calculations of payments to Named Plaintiff and the Opt-in Plaintiffs, (2) preparing, printing, and disseminating settlement checks, and any related notices to Named Plaintiff and the Opt-In Plaintiffs, (3) copying counsel for the Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications by Named Plaintiff and the Opt-In Plaintiffs, (4) receiving, reviewing, and responding to any inquiries submitted by Named Plaintiff and Opt-In Plaintiffs, (5) determining the amount of all payroll tax deductions to be withheld, (6) issuing payment for attorneys' fees and costs to Plaintiffs' Counsel, (7) printing

and providing W-2s and 1099 forms as required under applicable law, (8) completing any necessary tax reporting, and (9) such other tasks set forth in this Agreement, or as to which the Parties mutually agree. The costs for the settlement administration shall be paid for from the Maximum Gross Settlement and shall not exceed $25,000.00.

**E.** **Payment By SNS.** No later than ten (10) days after Court approval of this Agreement and dismissal of this lawsuit with prejudice, (a) Plaintiffs' Counsel shall provide the settlement administrator with an Excel chart listing the names and last known mailing addresses of Named Plaintiff and the Opt-In Plaintiffs listed in Exhibit "1" along with the allocation amongst the Named Plaintiff and Opt-In Plaintiffs of the net settlement fund; and (b) fourteen (14) days thereafter SNS shall remit to the settlement administrator, to be held by the settlement administrator to make payments as provided in this Agreement, 50% of the Maximum Gross Settlement Amount paid by SNS, and the remaining 50% of the Maximum Gross Settlement Amount paid by SNS no later than 60 days thereafter. After all payments are made under this Agreement, any remaining funds provided by SNS under this Agreement, such as estimated employer-side taxes that SNS owes on the portion of the settlement classified as W-2 wages.

    i.    Within fourteen (14) days after receipt of the payments from SNS, the settlement administrator shall send a "Settlement Notice Packet" to the Named Plaintiff and each Opt-In Plaintiff. The Settlement Notice Packet shall include:

        1.    a communication from Plaintiffs' Counsel in a form substantially similar to the attached Exhibit "2": (the "Class Communication"); and

        2.    a check for the Opt-In Plaintiffs' individual settlement amount payments, in the amounts set forth in Exhibit "1" (and the service payment to Named Plaintiff).

        3.    For income and payroll tax purposes, the Parties agree fifty percent (50%) of each settlement payment shall be allocated as alleged lost wages (which shall be subject to required withholdings and deductions and reported as wage income on an IRS Form W-2 as required by law), and fifty percent (50%) of each settlement payment shall be allocated as alleged liquidated damages and/or alleged interest. The settlement administrator shall be responsible for calculating, withholding, and timely remitting and reporting all taxes to the appropriate taxing authorities. The settlement administrator shall determine the proper tax reporting treatment for the Service Payment. Payments made for taxable wage income will not be considered wages for any purposes regarding the calculation, or re-calculation, of benefits under SNS benefit plans.

      ii.      If the settlement administrator receives notice that any Settlement Notice Packet was undeliverable, the settlement administrator shall promptly advise Plaintiffs' Counsel and endeavor to deliver the Settlement Notice Packet to the intended recipient to another address based on information provided by Plaintiffs' Counsel, or otherwise discerned by the settlement administrator. If the event a current address is not identified, the settlement administrator shall remit the settlement funds to the unclaimed funds agency of the state where that Opt-In Plaintiff last worked.

      iii.     The settlement administrator will make the Attorney's Fees Payment and the Attorney's Costs Payment by wire transfer, or by check, delivered to Plaintiffs' Counsel no later than fourteen (14) days after the settlement administrator receives the Maximum Gross Settlement Amount from SNS. Plaintiffs' Counsel will provide SNS's Counsel and the settlement administrator with the tax-payer identification numbers for Plaintiffs' Counsel, an executed W-9 form, and wire instructions.

      iv.     Except as otherwise provided herein, Named Plaintiff and the Opt-in Plaintiffs shall bear responsibility for their own attorney's fees and costs, incurred by them, or on o their behalf, or arising out of this Lawsuit and will not seek reimbursement thereof from SNS.

      v.      The Opt-In Plaintiffs will have one hundred eighty (180) days from the date the checks are issued to negotiate them. After one hundred eighty (180) days, the settlement administrator shall stop payments on any checks issued to Opt-In Plaintiffs that have not been negotiated. For those individuals whose settlement checks were returned as undeliverable, they shall have an additional ninety (90) days for a total of two hundred seventy (270) days to negotiate their settlement checks. The settlement administrator shall reissue any checks to Opt-In Plaintiffs that are lost or misplaced during the 180-day period. After the 180-day period expires, the funds for any uncashed checks shall be deposited into the unclaimed funds registry of the state where the Opt-In Plaintiff last worked.

    **F.**    **Attorneys' Fees and Costs.** Plaintiffs' Counsel will seek, and SNS will not oppose, approval of their requested attorneys' fees in the amount of $141,360.00. Plaintiffs' Counsel will seek, and SNS will not oppose, approval of an additional amount of $37,279.56 for litigation costs. The total for attorney's fees and costs shall not exceed $178,639.56. Except for this attorney's fees and cost payment, each party shall be responsible for payment of their own attorneys' fees and costs.

    **G.**    **Service Payment**. SNS will not oppose Named Plaintiff's request for a service payment of $10,000.00 to the Named Plaintiff. This incentive payment will be deducted from the Maximum Gross Settlement as specified above in Section I(C).

    **H.**    **Release.** The Parties agree the Court's Order approving the Parties' settlement shall serve as a release of all Plaintiff's claims as described in this Agreement, even if any Plaintiffs do not negotiate checks regarding the Parties' settlement.

## II. RELEASE

**A.** **Named Plaintiff Release of Claims.** For, and in consideration of the mutual promises included in this Agreement, including the additional payment of a Service Award as described in Section I.G., Named Plaintiff hereby forever and fully releases and discharges the Released Parties (as defined and described in Section II.C., herein), of and from any and all sums of money, accounts, claims, interests, demands, contracts, actions, debts, controversies, agreements, damages, attorneys' fees and costs, losses, and causes of action, whatsoever, of whatever kind or nature, known or unknown, suspected or unsuspected, which she now owns, holds, has, or claims to own, hold, or have, and any future consequences and causes of actions therefor, arising from her former employment with SNS, or any of its parents and subsidiaries, including, but not limited to, any and all matters alleged or referred to in the Lawsuit, whether they were, or could have been, asserted.

By way of example only (and without limitation), the claims released by Named Plaintiff include, but are not limited to: all claims under the Fair Labor Standards Act ("FLSA"), 29 USC §§ 201, *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; the Civil Rights Act of 1871, 42 U.S.C. §1981; the Civil Rights Act of 1991; § 503 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*; the Americans with Disabilities Act, 29 U.S.C. §§ 12101, *et seq.*, the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*, the Employee Retirement Income Security Act, the Equal Pay Act, 29 USC §§ 206(d), *et seq.*; the Lilly Ledbetter Fair Pay Act of 2009 ("LLFPA"), 42 U.S.C. § 2000e–5(e)(3)(A); any and all claims under Ohio law, and Ohio common law, all claims based on any express or implied contracts, and all claims for relief, including without limitation, minimum, overtime, or other wages, retaliation damages, unpaid costs, penalties (including, but not limited to, late payment penalties, wage statement or other record keeping penalties, and meal or rest break penalties), wage deductions, premium pay, liquidated damages, punitive damages, interest, attorneys' fees and costs, restitution, and equitable relief.

**B.** **Release of Claims by Opt-In Plaintiffs.** The Opt-In Plaintiffs forever and fully release and discharge the Released Parties of, and from, all wage and hour claims under federal, state, or local law, including all claims under federal, state, or local law for unpaid regular or overtime wages, any related wage and hour claims seeking compensation for hours worked, interest on such claims, liquidated or other damages, penalties, and attorneys' fees and costs, related to such claims.

**C.** **Released Parties.** The Released Parties are Steak N Shake, Inc. and all current or former parent companies, subsidiary companies, and/or related, affiliated, or predecessor companies, partnerships, and/or joint ventures and, with respect to each of them, all of its past, present, and future employees, officers, partners, principals, directors, stockholders, owners, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting, or alleged to be acting, by, through, under, or in concert with any of the persons or entities listed in this subsection, and their successors. Said parties are collectively referred to in this Agreement as the "Released Parties."

**D.** **Limitations.** The Releases in this Agreement do not extend to enforcement by either party of the obligations, terms, and covenants of this Agreement. Further, the release of claims shall not affect any rights or claims of the parties arising after this Agreement is executed.

### III. REPRESENTATIONS AND WARRANTIES

    **A.**    <u>Authority</u>. The signatories below represent they are fully authorized to enter into this Agreement and to bind the Parties to the terms and conditions in this Agreement.

    **B.**    <u>No Admission of Liability</u>. This Agreement is the result of a compromise of disputed claims and shall never, at any time, for any purpose, be considered as an admission of correctness, liability, or responsibility on the part of any party. The Parties agree they will never seek to introduce this Agreement as evidence of an admission of liability, or an admission of any violation of any federal, state, or local laws. Rather, SNS has denied, and continues denying, specifically and generally, the claims asserted in the Lawsuit and any and all liability or wrongdoing of any kind associated with the facts or claims alleged in the Lawsuit, including that continued collective action treatment is appropriate.

    **C.**    <u>Advice of Legal Counsel</u>. Before executing this Agreement, the Parties sought and obtained the advice of legal counsel. All of the Parties voluntarily, and with full knowledge of its significance, execute this Agreement with the express intention of extinguishing any, and all, obligations and claims owed by the Parties to each other arising from, of or connected with, the matters specified herein. All of the Parties acknowledge they have been represented by competent and experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

    **D.**    <u>Non-Assignment of Claims</u>. Named Plaintiff represents and warrants that, except Plaintiffs' Counsel, in any manner, including by way of subrogation or operation of law, or otherwise, no portion of any claim, right, demand, action, or cause of action which they have, or might have had, arising from the matters referred to herein, nor any portion of any recovery or settlement to which they might be entitled, has been assigned or transferred to any other person, firm, or corporation. If any claim, demand, or suit should be made, or instituted, against any of the Parties because of any such purported assignment, subrogation, or transfer, the other party agrees to indemnify and hold harmless the party subject to such an action against such claim, suit, or demand and to pay and satisfy any such claim, suit, or demand, including necessary expenses of investigation, actual attorneys' fees, and costs. However, before seeking indemnity, the claim will be presented to the other Party to provide a defense and/or to resolve.

    **E.**    <u>Adequate Investigation of Facts</u>. In making and executing this Agreement, the Parties have made such investigation of the facts and the law pertaining to the matters described herein and this Agreement as they have deemed necessary, and they do not rely, and have not relied, on any statement or representation, whether oral or written, made by any of the Parties to this Agreement with regard to any of the facts involved in any dispute or possible dispute between any of the Parties to this Agreement, or with regard to any of their rights or asserted rights, or with regard to the advisability of making and executing this Agreement.

    **F.**    <u>Assumption of Risk of Mistake</u>. The Parties expressly assume the risk of any mistake of fact, or that the true facts might be other or different from facts now known or believed to exist, and it is the express intention of the Parties to forever settle, adjust, and compromise the disputes raised in the Lawsuit without regard to who may, or may not, have been correct in their respective understandings of the facts or the laws relating thereto.

**G.     Understanding of Agreement.** The Parties have read and understand this Agreement and, if necessary, has had the same translated or explained to ensure the same.

**H.     Binding Nature of This Agreement.** Every term of this Agreement shall be binding on the agents, representatives, insurers, employees, attorneys, heirs, administrators, executors, successors, and assigns of the respective Parties hereto and any parent, subsidiary, or affiliated entity of such Parties.

**I.     Integration.** This Agreement constitutes the entire agreement between the Parties regarding the subject matter hereof, and further constitutes the final, complete, and exclusive expression of the terms and conditions of their agreement. Any and all prior agreements, representations, negotiations, and understandings, whether oral or written, express or implied, are hereby extinguished and merged in this Agreement.

**J.     Cooperation.** The Parties agree to execute any documents and instruments in writing which may be reasonably necessary, or proper, to effectuate, and carry out, the purposes of this Agreement.

**K.     Attorneys' Fees.** If one or more of the Parties brings an action, suit, or proceeding against any of the other Parties to enforce this Agreement, the validity hereof, any of the terms or provisions hereof, or any of the matters released hereby, or should any of the Parties assert this Agreement as an affirmative defense in an action brought by the other party, the prevailing party in such action, suit, or proceeding shall be entitled to recover from the other such party reasonable attorneys' fees to be fixed by the Court, as well as costs incurred in connection therewith, including attorneys' fees and costs relating to any and all appeals or petitions taken with respect to any such action, suit, or proceeding. Jurisdiction for any such disputes shall be in the Northern District of Ohio.

**L.     Modifications In Writing.** The Parties agree any modifications to this Agreement must be made in writing, and for SNS, by a duly-authorized representative, and must be executed by all of the Parties.

**M.     Other Rights and Obligations of the Parties.** Nothing in this Agreement shall otherwise affect, or alter, the rights and obligations of the Parties.

**N.     Cooperation for Settlement Approval.** The Parties agree to diligently work together to file, and submit, all documentation and information required by the Court for purposes of obtaining approval of this settlement and dismissal of the Lawsuit.

**O.     Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio.

**P.     Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one, and the same, written agreement.

**Q.     Construction.** Named Plaintiff, on the one hand, and SNS, on the other hand, through their counsel, participated in drafting this Agreement, and they agree any rule of construction that agreements, including captions therein, are to be construed adverse to the

drafter shall not apply to this Agreement. If one or more provisions of this Agreement are declared, or determined, by a court or arbitrator to be illegal, or invalid, the validity of the remaining terms shall not be affected thereby.

**R.** **No Waiver.** No waiver of any breach of any term or provision of this Agreement shall be, nor shall be construed as, a waiver of any other breach of this Agreement. No waiver shall be binding under this Agreement unless such waiver is in writing and signed by the party waiving the breach, and for SNS, by a duly-authorized representative.

**S.** **Severability.** If one or more provisions of this Agreement are found, by a proper authority, to be unenforceable, any such provision shall be severed and the remainder of the Agreement will remain in full force and effect.

**NAMED PLAINTIFF ACKNOWLEDGEs AND AGREES SHE HAS READ THIS AGREEMENT, HAS HAD THE OPPORTUNITY TO DISCUSS THE CONTENTS OF THIS AGREEMENT WITH THEIR COUNSEL, AND SHE HAS DONE SO, AND FURTHER SHE HAS KNOWINGLY AND VOLUNTARILY ENTERED INTO THIS AGREEMENT, AND SHE HAS HAD THE OPPORTUNITY TO HAVE THE AGREEMENT TRANSLATED OR EXPLAINED TO THE EXTENT SHE DEEMS NECESSARY AND SHE FULLY UNDERSTANDS IT.**

**T.** **Future Legal Proceedings.** If Plaintiffs' Counsel, or anyone working under their direction, receive inquiries from individuals (including those who joined the case, or others) with respect to any claims they believe they may have against SNS, Plaintiffs' Counsel will notify SNS's counsel of any such claims before instituting any legal proceedings; to the extent consistent with Plaintiff's Counsel's legal and ethical obligations, they will attempt to informally resolve any future disputes with SNS before any legal proceedings are commenced, which will include, if necessary, strong encouragement to participate in formal mediation of the matter before instituting further proceedings

**U.** **Confidentiality.** Plaintiffs' Counsel agrees to not publicize this settlement identifying SNS by name; but reserve the right to cite to the case in future proceedings against other defendants to demonstrate their qualifications, or supporting a fee request.

WHEREFORE, the Parties hereto have executed this Agreement on the dates set forth opposite their respective signatures.

ON BEHALF OF PLAINTIFF AND OPT-IN PLAINTIFFS:

Signed by: *[signature]*
F56167DCFE4440B...

**EMILY HARDING**

Date: 2/4/2025

ON BEHALF OF DEFENDANT STEAK N SHAKE, INC.

Chris Evans
PRINTED NAME

VP Real Estate and Legal
TITLE

*[signature]*
SIGNATURE

Date: 2.6.25

# EXHIBIT "1"

| Plaintiff |
|---|
| Aaron, Bryson |
| Abdullah, Mya |
| Adkins, Megan |
| Adkins, Theresa |
| Anderson, Alisha |
| Bagby, James |
| Ball, Zachary |
| Balrag, Samir |
| Baumgartner, Gabrielle |
| Benjamin, Brooke |
| Betts, Mindy |
| Beverly, Twila |
| Bigler, Rebel |
| Boles, Aaliyah |
| Bradford, Alanna |
| Bradley, Hayley |
| Braun, Kim |
| Burkhammer, Felicia |
| Burns, Caitlynn |
| Butler, Brandi |
| Carlile, Christian |
| Cash, Bryson E. |
| Church-Green, Alleigha |
| Clark, Emily |
| Cokes, Raygn |
| Cole, Tantiara |
| Combs, Alexis |
| Conwell, Diana |
| Cook, Makayla |
| Cooper, Kandi |
| Crist, Amber |
| Crowe, Sabrina |
| Darby, Iesha M. |
| Darling, Sophia |
| Davis, Jharad |
| Dill, Destiny |
| Dixon, Paden |

| |
|---|
| Dover, Tonya |
| Dunbar, Breanna |
| Favors, Kysiah |
| Fields, Keyara |
| Frank, Kenneth |
| Frazier, Riley |
| French, Jennifer |
| Gossard, Desiree |
| Griest, Loretta |
| Haight, Kim |
| Hall, Amber |
| Harding, Emily |
| Harrison, Adriana |
| Hatfield, Tara |
| Hodge, Burgandee |
| Holman, Calle |
| Howell, Kristen |
| Hudson, Ryan |
| Jennifer, Norman K. |
| Jones, Jade |
| Kaman, Hannah |
| Katcher, Luciya |
| Keller, Brandy |
| Keslar, Shawn |
| Kilbane, Bridgette |
| Lagro, Christine |
| Larew, Nykolas |
| Leady, Brittany |
| Leek, Madelyn |
| Lesesne, Faith |
| Lilly, Dana |
| Limbert, Delaney |
| Linn, Hannah |
| Longstreth, Jennifer |
| Lowe, Shannon |
| Lynn, Shauna |
| Marmol, Charity |
| Mason, Maria |
| Mattox, Kailyn |
| McCartney, Brittany |
| McCole, Ayanna |
| Mckown, Tanya |
| Mehra, Ayush |

| |
|---|
| Melcher, Skylar |
| Mellon, Candace |
| Merzweiler, Morgan |
| Miller, Holly |
| Minniefield, Brittany |
| Moody, Kennedy |
| Moon, Kourtney |
| Moore, Lyndsey |
| Moores, Theresa |
| Morrison, Marcus |
| Munson, Kylar |
| Odwyer, Jocelyn |
| Ody, Emily |
| Oseni, Abiola |
| Owens, Alicia |
| Parham, Makayla |
| Parker, Alyssa |
| Parmer, Kalee |
| Parsons, Bobby |
| Pennington, Allison |
| Peters, Alexandra |
| Peters, Melissa |
| Phillips, Michele |
| Price, Larry |
| Richey, Ciaira |
| Ries, Kaylee |
| Rittenour, Amanda |
| Robinson, Kyrsten |
| Rosas, Melina |
| Schofield, Katherine |
| Schrack, Jeriam |
| Schuster, Micha |
| Schwab, Brenda |
| Sedlacek, Samantha |
| Seiler, Jennifer |
| Shaheen, Hamann |
| Shear, Destiny |
| Sheets, Jacob |
| Sheppard, Jonathan |
| Shultz, Elizabeth |
| Sigworth, Kayla |
| Skinner, Cassandra |
| Smith, Clarissa |

| |
|---|
| Smith, Joseph |
| Smith, Madison |
| Stewart, Dontashia |
| Stone, Emily J. |
| Strickland, Myah |
| Sutherland, Ariene |
| Swartz, Twila |
| Tomes (Perrault), Dorothy |
| Tucke, Addie |
| Tuskes, Melissa |
| Tyler, Chevyn |
| Vandiver, Melissa |
| Ventola, Maria |
| Vincent, Bailey |
| Vitruis, Tammy |
| Walker, Lieshia |
| Waugh, Ashley |
| Weathersby, Dorthea |
| Wentz, Cooper |
| White, Deszaree |
| Williams, Janiya |
| Wilson, Stephenie L. |
| Wiseman, Kylee |
| Wissmann, Joseph |
| Wornley, Kassie |
| Zornes, Jeffrey |

# EXHIBIT "2"

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## CLEVELAND DIVISION

| | |
|---|---|
| EMILY HARDING, on Behalf of Herself and All Others Similarly Situated, ) | CASE NO. 1:21-CV-1212 |
| Plaintiff, ) | |
| ) | JUDGE: BRIDGET MEEHAN BRENNAN |
| v. ) | |
| STEAK N SHAKE, INC. ) | |
| Defendant. ) | |

**NOTICE OF SETTLEMENT FOR _____ IN THE AMOUNT OF: _____**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU WORKED AS A SERVER FOR STEAK N SHAKE AND CONSENTED TO JOIN THIS CASE**

### I. DESCRIPTION OF THE LAWSUIT

In June 2021, a former server of Steak N Shake in Ohio brought this lawsuit alleging that she was owed unpaid wages because she should have been paid the full minimum wage during periods of time when she worked for Steak N Shake. The Plaintiff alleged that she and other tipped workers spent more than 20% of her time at work per week performing non-tipped duties. She further alleged that she and other tipped workers were required to perform duties unrelated to their jobs as tipped workers. Steak N Shake denied the allegations and contends that the Plaintiff and all other tipped workers were correctly paid in compliance with the law.

On February 11, 2022, this Court certified this case as a collective action. (Doc. 56). The Court certified the following collective:

> All current and former tipped employees who worked for Defendant for at least one week in Ohio during the three-year period prior to the date the Court grants conditional certification.

You were listed as a putative class member and returned a consent form to join the case.

## II.    HOW THE SETTLEMENT WAS REACHED

During the lawsuit, both sides vigorously presented their legal positions and faced uncertainty as to which side was correct. The Plaintiff argued that significant time was worked by tipped workers performing non-tip generating duties. Steak N Shake countered that tipped workers spent little time, if any, performing work unrelated to tips.

At the end of the discovery period, the Plaintiff moved for summary judgment against Steak N Shake. The court granted the summary judgment on some claims but denied it on others. Considering the risks of litigation and the significant cost associated, both sides attended mediation which resulted in the settlement.

During the lawsuit, Steak N Shake provided the pay records, time records, and point of sale records for individuals who joined this case. Using these records, the Parties calculated the potential amount owed for unpaid wages, subject to a minimum payment of $150. After the settlement was reached, the Parties submitted the settlement to the United States District Court for the Northern District of Ohio for approval. The Court approved the settlement as fair and reasonable given the circumstances of the case.

## III.    YOUR SETTLEMENT AMOUNT

This case has settled. Your individual settlement is based on (1) the date your "opt-in" consent form was filed with the Court, (2) the number of weeks that you worked for Steak N Shake during the relevant time period, (3) the number of hours that you worked for Steak N Shake, and (4) your hourly rate. You were then allocated your proportionate share of the settlement based upon the amount that you were owed in relation to the total amount owed for the class.

Your Individual Settlement Payment listed at the top of this Notice is subject to a tax breakdown of 50% W-2 wages, and 50% 1099 non-wage income. No tax advice is being provided and you can consult with a tax advisor if you have questions about the tax treatment of this payment.

## IV.    RELEASE OF CLAIMS

Attached to this letter is a check with your individual settlement amount that was approved by the Court. As a material term of this settlement, you agree to release all wage and hour claims under federal, state, or local law, including all claims under federal, state, or local law for unpaid regular or overtime wages, any related wage and hour claims seeking compensation for hours worked, interest on such claims, liquidated or other damages, penalties, and attorneys' fees and costs, related to such claims against the Released Parties, and including the claims raised in this lawsuit. The Released Parties are Steak N Shake, Inc. and all current or former parent companies, subsidiary companies, and/or related, affiliated, or predecessor companies, partnerships, and/or joint ventures and, with respect to each of them, all of its past, present, and future employees, officers, partners, principals, directors, stockholders, owners, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting, or alleged to be acting, by, through, under, or in concert with any of the persons or entities listed in this subsection, and their successors.

The above description is a summary of the release described in the Settlement Agreement.

## V. **QUESTIONS**

If you have questions regarding the Settlement, please contact the Class Administrator. The Class Administrator's contact information is below:

INSERT ADDRESS

## VI. **ATTORNEYS FOR PLAINTIFFS**

Please carefully review this Notice which applies to your Settlement. If you would like a copy of the Court Order approving the settlement or the full Settlement Agreement, you can email or call the attorneys for the Plaintiff listed below.

Please keep a copy of this Notice for your records.

THE LAZZARO LAW FIRM, LLC
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Phone: 216-696-5000
Facsimile: 216-696-7005
Email: anthony@lazzarolaw.com

HODGES & FOTY, L.L.P.
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
Email: agalvan@hftrialfirm.com