UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY HARDING, on behalf of herself and all others similarly situated, | ) ) ) | CASE NO. 1:21-cv-1212 |
| Plaintiff, | ) ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| STEAK N SHAKE, INC., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Before the Court is the parties' consent motion for approval of settlement. (Doc. 100.) Because the Court finds the settlement is a fair resolution of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, this motion is GRANTED, the settlement is APPROVED, and the case is DISMISSED with prejudice.

I.  **BACKGROUND**

On June 21, 2021, Plaintiff Betsy Ramos filed a collective action lawsuit related to her work at Steak N Shake Inc. ("Steak N Shake" or "Defendant"). (Doc. 1.) Plaintiff Emily Harding was substituted as the Named Plaintiff. (Doc. 7.) Plaintiffs allege they were paid at an hourly rate less than the minimum wage in violation of the FLSA and the Ohio Minimum Fair Wage Standards Act. (*See* Doc. 15.)

On February 11, 2022, the Court certified this case as a collective action. (Doc. 56.) Notices were mailed to potential collective members and 149 people, including Harding, opted into the case. (*See* Doc. 100 at 2034.)[1] From July 2022 to February 2023, the parties engaged in written discovery and exchanged information about their respective positions. (*See id.* at 2033–

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

34.)  After discovery closed, Plaintiffs sought partial summary judgment on liability.  (Doc. 83.)  On August 15, 2024, Plaintiffs' motion for partial summary judgment was granted in part and denied in part.  (Doc. 91.)

On November 12, 2024, the parties mediated before Magistrate Judge Jennifer Dowdell Armstrong.  (November 12, 2024 Minutes of Proceedings.)  The parties reached a settlement agreement.  (*See* November 25, 2024 Minutes of Proceedings; *see also* Doc. 100-1.)  On February 7, 2024, the parties filed the instant motion for approval of the settlement agreement.  The total settlement amount is $372,000.  (Doc. 100 at 2035.)  From the total settlement amount, $158,360.44 will be paid to Plaintiffs.  (*Id.*)  The settlement agreement further provides $141,360 in attorney's fees, $37,279.56 in litigation costs, a $10,000 service award to Harding, and a maximum fee of $25,000 to a third-party administrator.  (*Id.*)

**II.     STANDARD OF REVIEW**

The "central purpose of the FLSA is to protect covered employees against labor conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'"  *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299, 2008 WL 4724499, at *2, 2008 U.S. Dist. LEXIS 90070, at *11 (E.D. Ky. Oct. 23, 2009) (quoting 29 U.S.C. § 202).  As a general rule, the FLSA's provisions are not subject to bargaining, modification by contract, or settlement.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945) (holding policy considerations forbid waiver of rights created by the FLSA); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (FLSA provisions "are not subject to negotiation or bargaining between employers and employees").  There is an exception to this general rule when an employee brings a private action in a federal district court under 29 U.S.C. § 216(b) and presents the court with a proposed

settlement.  *Id.*; *see also Pitty v. Conrad's Laserwash Co., Inc.*, No. 5:23-cv-2034, 2023 WL 7166917, at *1, 2023 U.S. Dist. LEXIS 194639, at *2–3 (N.D. Ohio Oct. 31, 2023).

Upon review of a settlement of FLSA claims, the court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09-cv-16108, 2010 WL 2490989, at *5, 2010 U.S. Dist. LEXIS 58912, at *13 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F.Supp. 2d 714, 719 (E.D. La. 2000)).  The Court must "scrutinize the proposed settlement for fairness to determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Pitty*, 2023 WL 7166917, at *1, 2023 U.S. Dist. LEXIS 194639, at *3 (citing *Bartlow v. Grand Crown Resorts of Pigeon Forge*, No. 3:11-cv-400, 2012 WL 6707008, at *1, 2012 U.S. Dist, LEXIS 181808, at *4 (E.D. Tenn. Dec. 26, 2012)).

Courts consider several factors including: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; the amount of discovery completed; the likelihood of success on the merits; and the public interest in settlement.  *Crawford*, 2008 WL 4724499, at *2, 2008 U.S. Dist. LEXIS 90070, at *14 (citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  When a settlement agreement proposes an award of attorney's fees, such fees must be reasonable.  *See generally Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

III. **ANALYSIS**

This action presented a bona fide dispute.  The parties set forth divergent views of the facts and the applicable law.  The parties' motion confirms as much.  (Doc. 100 at 2037; *see also* Doc. 100-3 at 2094–95 (detailing disputes between the parties regarding liability and damages).)

3

The terms of settlement resulted from arm's length negotiations between the parties. There is no implication of fraud or collusion. *See, e.g.*, *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."). (*See also* Doc. 100 at 2037.)

Wage and hour class and collective actions are "inherently complex and time consuming," and this case is no exception. (Doc. 100 at 2037–38 (quoting *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 WL 5023950, 2018 U.S. Dist. LEXIS 179474 (S.D. Ohio Oct. 17, 2018)). If the parties were to litigate this case further, they would incur additional expenses, including preparing for and completing a trial on the merits, which would involve complex and factually intensive questions on both liability and damages. (*See id.* at 2038.) The parties add that following a trial, either party would have appealed an adverse decision. (*Id.*)

The parties engaged in extensive fact discovery, completing nine depositions and significant written discovery, and retained an expert. (*See id.*) As for success on the merits, settlement secures a substantial recovery for Plaintiffs. (*Id.* at 2038–39.)

Public policy supports approving the settlement. Rather than requiring the parties bear the risks of trial and a possible appeal, "the certainty and finality that comes with settlement also weighs in favor of approving the agreement." *Williams v. CH-HHC, Inv.*, No. 5:22-cv-1003, 2024 WL 1514587, at *2, 2024 U.S. Dist. LEXIS 63514, at *5 (N.D. Ohio Apr. 8, 2024). "Settlement is the preferred means of resolving litigation." *Crawford*, 2008 WL 4724499, at * 9, 2008 U.S. Dist. LEXIS 90070, at *31.

The settlement agreement provides all 149 opt-in Plaintiffs with monetary compensation based on Defendant's payroll and timekeeping data and statistical analysis. (Doc. 100 at 2034;

*see also* Doc. 100-3 at 2094, ¶ 25.)  Plaintiffs will be eligible to receive direct payment without releasing other employmen- related claims or completing a claim form.  (Doc. 100 at 2034.)

The Court considers Plaintiffs' counsel's opinion that the settlement fairly accounts for the compensation allegedly owed to Plaintiffs.  (Doc. 100-3 at 2094, ¶ 22.)  The Court also notes the Net Settlement Fund for Plaintiffs is roughly 190% of the back wages owed under Plaintiff's dual jobs claim.  (Doc. 100 at 2035.)  The Court finds the settlement to be a positive result, especially given that the award compensates each opt-in participant fully for back wages.

The Court finds the award of attorney's fees to Plaintiffs' counsel is reasonable, considering the extent of the proceedings and the outcome.  There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method.  *Van Horn v. Nationwide Prop. 7 Cas. Ins. Co.*, 436 Fed. App'x 496, 498 (6th Cir. 2011).  Starting with the lodestar method, three attorneys represented Plaintiffs.  (*See* Doc. 100-3 at 2096, ¶ 31.)  Attorney Don Foty spent 615 hours at a rate of $675.00 per hour.  (*Id.*)  Attorney Matthew Grimsely spent 9.2 hours at a rate of $475 per hour.  (*Id.*)  Attorney Lori Griffin spent 80 hours at a rate of $475 per hour.  (*Id.*)  The Court finds these rates reasonable.  *See Clemmons v. Deacon 10, LLC*, No. 1:19-cv-2549, 2024 WL 1242306, at *3, 2024 U.S. Dist. LEXIS 50866, at *7–9 (N.D. Ohio Mar. 22, 2024) (approving similar rates for attorneys Griffin and Grimsley); *see also Hill v. Berryhill*, No. 3:16-cv-174, 2017 WL 6629104, at *2, 2017 U.S. Dist. LEXIS 213021, at *5 (S.D. Ohio Dec. 29, 2017) (approving $675.00 per hour as "reasonable in light of the excellent results Plaintiff's counsel obtained in this case").  The Court also finds the number of hours expended reasonable, given discovery, briefing, mediation, and settlement negotiations over several years.

Under the percentage-of-the-fund method, "the court simply determines the percentage of the settlement to award the class counsel." *Lonardo v. Travelers Indem. Co.*, 706 F.Supp.3d 766, 789 (N.D. Ohio 2010) ("[P]ercentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share[.]"). Plaintiffs' counsel seeks $141,360 in fees, or 38% of the total recovery. (Doc. 100 at 2040.) Other courts have found higher percentages to be reasonable. *See Williams*, 2024 WL 1514587, at *3, 2024 U.S. Dist. LEXIS 63514, at *7–8 (approving attorney's fees totaling slightly greater than 50% of the total monetary award"); *see also White v. Stark Cnty. Veterans' Serv. Comm'n*, No. 5:22-cv-1493, 2023 WL 7130799, at *3, 2023 U.S. Dist. LEXIS 193634, at *10 (N.D. Ohio Oct. 30, 2023) (same). Using this method, the Court finds the percentage of the settlement awarded to class counsel reasonable.

The settlement agreement also provides for litigation costs totaling $37,279.56. (Doc. 100 at 2042–43.) This figure covers the filing fee, notice costs, deposition costs, expert fees, printing costs, mediation expenses, research, and data entry, travel costs, meals, and miscellaneous expenses. (*Id.*) The Court finds these fees to be reasonable.

Lastly, the Settlement Agreement provides for a $10,000 incentive award for named Plaintiff Emily Harding. Such awards are "not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the court of the class action litigation.'" *Chambers v. A.R.E. Accessories LLC*, No. 5:23-cv-890, 2024 WL 3179702, at *4, 2024 U.S. Dist. LEXIS 112086, at *10 (N.D. Ohio June 26, 2024) (quoting *Dillsworth v. Case Farms Processing, Inc.*, No. 5:08-v-1694, 2010 WL 776933, at *7, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010)). Here, Harding participated in litigation, providing "extensive and critical factual information," engaging in

"several and extensive communications with Plaintiffs' counsel," sitting for a deposition, and participating in settlement conferences. (Doc. 100 at 2044.) As a result, the Court approves the service award to Harding in recognition of her service.

IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS the parties' consent motion for approval of settlement. (Doc. 100.) The settlement is APPROVED. This case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Date: March 24, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE